CASE 26.—PERSONAL INJURY ACTION BY WILLIS SWART-
WOOD'S GUARDIAN AND OTHERS AGAINST THE
LOUISVILLE & NASHVILLE R. R. CO. AND
OTHERS.

## Swartwood's Gdn., &c., v. L. & N. R. R. Co.

Appeal from Kenton Circuit Court.

W. McD. SHAW, Circuit Judge.

From a dismissal on demurrer plaintiffs appeal—
Affirmed.

1.  Railroads—Injuries to Trespassers—Duty as to Children Jump-
    ing on Cars.—While those in charge of trains, if they know
    of the actual presence of children jumping off and on the
    moving cars, are required not to injure them if with the
    means at their command they can avoid doing so, a railroad
    company whose lines pass through cities or other populous
    communities is not required to maintain a lookout there
    for children who are in the habit of jumping on and off the
    cars while in motion.
2.  Same—Attracting Children to Tracks.—A railroad company's
    liability for an injury to a child while jumping on and off
    moving trains was not affected by the fact that the com-
    pany had placed a sand pile in an adjacent vacant lot, and
    that the child had been attracted thereby to the vicinity of

the tracks, since the sand had no connection with the injury, and was not the proximate cause of it.

B. F. GRAZIANA for appellant.

It is shown by the petition:

First, that the defendant company maintained an unfenced strip of land, and deposited a pile of sand thereon.

Second, that tracks lay upon Washington street immediately adjacent to the sand pile.

Third, that appellees maintained and operated a tower-house on the lot overlooking where the boys were at play, with a watchman by day and by night in the tower-house.

Fourth, that Tenth and Washington streets was a thickly populated part of the city of Covington, in the heart of the city, where hundreds of children daily congregated and played and "jumped" the trains that lay on the track or passed by.

Fifth, that the watchman in the tower-house and the employees in charge of the train saw these boys "jumping" trains, and knew it for months before the date of the appellant's injury.

Sixth, that the sand-pile on the unfenced strip of land was seductive and alluring to children of the neighborhood, and the children of the neighborhood resorted there and were permitted by the defendants to there congregate and play; that it was generally, commonly, and daily the habit of the children to jump upon the trains as they passed by this strip of ground; that the watchman, and the servants of the company saw the children doing this, and notwithstanding that fact failed to prevent the action on the part of the children.

### AUTHORITIES CITED.

Louisville & Nashville R. R. Co. v. Popp, 96 Ky., 103; Branson's Admr. v. Labrot, 81 Ky., 638; Sioux City & Pacific R. R. Co. v. Stout, 17 Wallace, 657; Louisville & Nashville R. R. Co. v. Potts, 17 S. W., 186; Price v. Atchison Water Co., 3 Amer. Neg. Rep., 392; Thompson on Negligence, vol. 1, sec. 945.

BENJAMIN D. WARFIELD for appellee.

JOHN GALVIN, S. D. ROUSE and MAURICE L. GALVIN of counsel.

The proposition that there is no liability upon the part of appellees for the unfortunate accident which the appellant

brought upon himself by reason of his own gross carelessness, seems to us to be so plain, that we will not impose upon the court the labor of reading a long brief from us in this case. We do not think the court will need any authority for the proposition that the trial court could not have done otherwise than it did do in sustaining appellee's demurrers to the petition. Therefore, we have not quoted from most of the cases we have cited at all; and have quoted only very briefly from those from which we have quoted. If the court has any doubt that the cases we have quoted from and cited sustain the propositions on which we use them, of course the court will read those cases, most of which have been numerously reported.

### AUTHORITIES CITED.

Setter's Admr. v. City of Maysville, 114 Ky., 68; 2 Shearman & Redfield on Negligence, section 26; Whatton, Law of Neg., section 134; N. N. & M. V. R. R. Co. v. Deuser, 97 Ky., 92; L. & N. R. R. Co. v. Vittitoe's Admr., 19 Ky. Law Rep., 612; L. & N. R. R. Co. v. Webb, by &c., 99 Ky., 348-9; L. & N. R. R. Co. v. Hurt, by &c., 11 Ky. Law Rep., 825; Jackson's Admr. v. L. & N. R. R. Co., 20 R., 309; L. & N. R. Co. v. Logsdon's Admr., 118 Ky., 605; O'Bannion's Admr. v. Southern Ry. Co. in Ky.; Wheeling & L E. R. Co. v. Harvey; Swarts v. Akron Water Works Co., 83 N. W., 66. See also Frost v. Eastern R. Co., 64 N. H., 220; Danials v. N. Y. & N. E. R. R. Co. (Mass.) 13 L. R. A., 248; McAlpin v. Powell, 70 N. Y., 126; 26 Am. Rep., 555; St. L. V. & T. R. R. Co v. Bell, 81 Ill., 76; McCabe v. American Woolen Co., 124 Fed., 283; 132 Fed., 1006; Slack v. Suddoth (Tenn.) 45 L. R. A., 591; Peters v. Bowman, 115 Cal., 345; 56 Am. St. Rep., 106; 47 Pac., 113, 598; Stendal v. Boyd, 73 Minn., 53; 42 L. R. A. 288; 72 Am. St. Rep., 854; 32 N. W., 223; Moran v. Pullman Car Co., 134 Mo., 641; 33 L. R. A., 291; 75 Am. St. Rep., 447; 53 S. W., 900; (Arnold, et ux., v. City of St. Louis, et al.); Ritz v. Wheeling (W. Va.) 43 L. R. A., 148; Gillespie v. McGowan, 100 Pa. St., 144; 45 Am. Rep., 356; Sullivan v. Huidekoper, 27 App. D. C., 154; 5 L. R. A. (N. S.) 265; Railroad Co. v. Beavers, 113 Ga., 393; 54 L. R. A., 314.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR—
Affirming.

The question for decision in this case is whether
railroad companies whose lines traverse cities and
towns, or other populous communities, must maintain
a lookout for children who are in the habit of jump-
ing on and off the cars while in motion, although the
railroad people did not know the particular child who
might be injured by such practice was in fact upon
its cars, and to provide against such injuries.

The petition in this case, which was held bad on
demurrer, alleged that the infant plaintiff, aged eight
years, was attracted to appellee's trains in the city
of Covington by other children jumping on and off
the cars while in motion, stealing rides, and that the
defendants were aware of the practices of such chil-
dren at that point; that a watchman of the appellees,
whose duty it was to lower and raise a nearby gate
across a street railroad intersection, also knew of the
practice of the children, but on the occasion of the
plaintiff's injury took no precaution to learn whether
he was on the train or not; that plaintiff, following
the practice of the other children, and in attempting
to jump on one of the moving cars, slipped and fell
beneath it. thereby having a foot cut off.  It is not
charged that the defendants knew that plaintiff was
attempting to make his perilous try at the time he did
it, or that defendants neglected to use any precau-
tion to save him from injury after discovering his
peril.  So the question comes down to the point stated
in the beginning of this opinion.  It is a fact of which
we all know that railroads traverse streets and lots
in our cities on their grade; that there is little or no

protection against trespassing upon the railroad tracks; that children and others do so in spite of the well-known dangers of the practice. The Legislature has not taken action to require the railroad companies or the cities to maintain barriers against such tres-passers. The habit of such trespassing, including, perhaps, the childish tendency and practice of clam-bering onto the moving cars to get a short free ride, is well known also to everybody, including, of course, the railroad people. If the operators of the train know of the actual presence of such trespassers, for such they are, they are required by the humaneness of the law to not injure them if with the means at their command they can avoid doing so. Nor will the inconvenience and annoyance entailed be counted. The courts have never gone further than that. The Legislature may, but it has not. Any other rule, particularly the one contended for by appellant, would require practically that such railroads should police all their lines and vehicles in such cities and towns in anticipation of the dangers to thoughtless and heedless persons. Because of their inexperience and childish instincts, infants of tender years are not always held to the same strict accountability as adults in such matters. The latter are charged with their own negligence in wilfully going into such perilous places without right to do so; but, even if they were not negligent, as for example if they were insane, the rule would not be different. So the rule is not based entirely upon the negligence or even wrong of the so-called trespasser. Rather the reason a recovery is denied is because the railroad company has not been legally negligent of any duty it owed to such person. Without legal duty there cannot be actionable negli-gence. The duty is not owing because, as such per-

son had not the right to be at the place, his presence need not be expected, and need not therefore be provided against. It is true it is known that such trespasses are probable; but they are sporadic. The railroads are required to serve the public by running their trains over their tracks. They are held to a rather strict accountability in many matters connected therewith. To require this additional duty would be to put railroad operations beneath the rights of trespassers upon the railway tracks. It would be hard, if not impracticable, to draw a line between wilful trespassers and those of other degrees, or between those who trespass in towns and those who trespass in the country. Both quarters are alike subject to the practice, though with varying frequency. Hence no distinction is recognized as existing with respect to such.

The courts have gone as far as seems allowable within the principles of the common law, in applying the doctrine of liability to technical trespassers; where, for example, the public uses a railroad as a street or passway for such time and with such frequency as to show with reasonable certainty that they are present at all times, the railroad company by its acquiescence seemingly assenting to and inviting such use, the traveler is not deemed a trespasser, or, if he is, the company is charged with notice of the fact of his presence. It may be thought harsh and arbitrary to draw a line between such and children who are allowed to habitually trespass on the moving cars. But the line must of necessity be drawn somewhere. And, where the gradation becomes shadowy and indistinct, it may appear that the line is drawn arbitrarily. But it is not so in this instance. A very practical differentiation exists logically. The public—which, of course, includes everybody—may

obtain an easement in land by prescription. The particular land thereby is dedicated to the public use. As railroads do run upon streets of cities, it is not inconsistent that streets may be opened up along the railroad track. If the railroad, in fact, so dedicates its track in a city or allows it to be so used for such a length of time as that the public right attaches as if there had been such dedication, then the public are there as a matter of right; or, at least, the railroad, because of its acquiescence and seeming invitation, will not be heard to deny it  Its duty in that event is to maintain a lookout for such persons, knowing they are probably present; and to take precautions against injuring them. But this rule of presumptive dedication does not apply as to sparsely settled sections, or where the use is comparatively infrequent, and without semblance of an assertion of a public right. These rules obtain without any respect to the ages or mental conditions of those using such ways. Now as to the cars, there is no such thing as the public's acquiring a right to use them by prescription. There is no precedent for such claim, and no principle in law analogous to it. All who venture unbidden by the company and unknown to it upon its trains do so at their own peril, as they can have no right, and the company therefore owes them no duty, in such case. This rule also applies from the very necessity of the matter, without respect to the age or condition of the trespasser, for the court must deal with the question first of legal duty, not compassionable innocence.

Counsel for appellant cites and relies upon Louisville & Nashville Railroad Company v. Popp, 96 Ky. 103, 27 S. W. 992, 16 Ky. Law Rep. 369; Bransom's Adm'r v. Labrot, 81 Ky. 638, 5 Ky. Law Rep. 827, 50 Am. Rep. 193, and a line of cases known as the

"Turntable Cases." In L. &,N. R. R. Co. v. Popp, supra. the injured child was known to be on the car by the trainmen when they bumped other cars against it so violently and negligently as to throw the plaintiff off and hurt him. The principle on which the recovery was allowed in that case is one firmly fixed, namely, the known presence of a trespasser imposes the duty on the trainmen to use care not to injure him. They have the right to eject him because he is a trespasser, but not to kill or maim him. Bransom v. Labrot, supra, rests on the same principle as the turntable cases, namely, the negligent leaving upon one's lands unguarded dangerous contrivances attractive to children, whereby they are lured onto the real property of the negligent owner and sustain injury. But that principle has not a place here. The cars were not left in unguarded lots, but were being used in the only way the conditions permitted them to be used at the time and place.

So far we have discussed this case omitting to mention another allegation of the petition which appellant seems to place some stress upon supporting a right to recover in this action; that is, it is alleged that on an open lot owned by defendants adjacent to their track where the injury occurred defendants had placed a pile of sand and left it unguarded, which was attractive to children, and did attract them and the plaintiff to that point to play; that whilst they were there the train came along, when plaintiff left the sand pile, and attempted to board the cars. The allegation as to the sand is wholly redundant. The sand had no connection with the injury, and was not a proximate cause of it. If the plaintiff had been injured by the sand, or by rolling or slipping from it under the train,

and thereby got hurt, a different question would be ,
presented.  But such was not the fact

We are of the opinion that the ruling on the de-
murrer was without error; and the judgment must
be affirmed.