## LAWHORN v. DENVER AND RIO GRANDE RAILROAD CO.

### No. 2380. Decided January 28, 1913 (130 Pac. 470).

1. TRIAL—INSTRUCTIONS—APPLICABILITY TO PLEADINGS. Where the complaint, in an action against a railroad company, by an infant who, in attempting to board one of its slowly moving freight trains, fell beneath the cars and was injured, averred that defendant was in the habit of permitting persons, especially children, to ride on its freight trains without warning them that it was dangerous to board moving trains, and on the day in question the engineer knowingly invited plaintiff to ride, and, observing that he was about to board the train, wantonly jerked it, throwing him to the ground, a charge that the operatives of the railroad company were bound to use ordinary care to avoid injuring plaintiff, or to prevent him from getting on the car, is authorized. (Page 251.)

2. RAILROADS—LICENSEES—CHILDREN—STANDARD OF CARE. Where it was the long-continued habit and custom of children to board defendant's freight trains in the presence of the crew, without objection, a child, who boarded defendant's train with the acquiescence and consent of the engineer, is not to be treated as a trespasser whose only rights are that the train crew should not willfully and wantonly injure him, but is entitled to ordinary care. (Page 253.)

APPEAL from District Court, Third Judicial District; *Hon. T. D. Lewis,* Judge.

Action by Holman Lawhorn, an infant, by his guardian *ad litem,* J. W. Lawhorn, against the Denver and Rio Grande Railroad Company.

Judgment for plaintiff.    Defendant appeals.

AFFIRMED.

*Van Cott, Allison & Riter* for appellant.

*Powers & Marioneaux* and *Jas. D. Pardee* for respondent.

The cases cited by appellant, referred to in the opinion, were as follows:    *Smalley v. R. G. W.,* 34 Utah, 423, 98 Pac. 311; *Wilson v. Railway Co.,* 66 Kan. 183, 71 Pac. 282; *Barney v. Railway Co.,* 126 Mo. 372, 28 S. W. 1069, 26 L. R. A. 847; *Railway Co. v. Redding,* 140 Ind. 101, 39 N. E. 921, 34 L. R. A. 767; *Powers v. Railway Co.,* 57 Minn. 332, 59 N. W. 307; *Haberlau v. Railway Co.,* 73 Ill. App. 261; *Catlett v. Railway Co.,* 57 Ark. 461, 21 S. W. 1062, 38 Am. St. Rep. 254; *Underwood v. Western & A. Ry. Co.,* 105 Ga. 48, 31 S. E. 123; *Bishop v. Railway Co.,* 14 R. I. 314, 51 Am. Rep. 386; *Railway Co. v. Stumps,* 69 Ill. 409; *Emerson v. Peteler,* 35 Minn. 481, 29 N. W. 311, 59 Am. Rep. 337; *Railway Co. v. Connell,* 88 Pa. 520, 32 Am. Rep. 472; *Snyder v. Railway Co.,* 60 Mo. 413; *Atchison, T. & S. F. R. Co. v. Plaskett,* 47 Kan. 107, 26 Pac. 401; *Railway Co. v. Roath,* 35 Ill. App. 349; *Railway Co. v. Jenks,* 54 Ill. App. 91; *Meehan v. Railway Co.,* 67 Ill. App. 39; *Railway Co. v. Hurt* (Ky.), 13 S. W. 275; *Railway Co. v. Webb,* 99 Ky. 332, 35 S. W. 1117; *Wabash R. Co. v. Norway,* 7 Ohio Cir. Ct. R. (O. S.) 449; *Murray v. Railway Co.,* 93 N. C. 92; *Seeley v. Railway Co.,* 157 Mich. 688, 122 N. W. 214; *Jefferson v. Railway Co.,* 116 Ala. 294, 22 South. 546, 38 L. R. A. 458, 67 Am. St. Rep. 116, *Railway Co. v. Ledbetter,* 45 Ark. 246.

STRAUP, J.

This is an action to recover damages for injuries alleged to have been occasioned through the negligence of the defendant. The injury occurred in Bingham Canyon. There the defendant operated two lines of railroad, one along the bed of the canyon for the transportation of passengers and freight, called the low line; the other, called the high line, along the side of the canyon for the transportation of freight, mostly ore, from mines up the canyon to a place below, called Welby, a distance of about fourteen miles. The grade is very steep. Special ore cars of steel and hopper bottom, about thirty-six feet long, were used for this purpose. About twenty-eight cars were generally operated in a train from Welby to the mine. The crew of each was composed of an engineer and a fireman on the engine, a head brakeman on the pilot, and a conductor and a brakeman in the caboose at the rear. The plaintiff, at the time of the accident, was nine years old. He lived in the canyon with his parents. The record recites that the plaintiff introduced evidence tending to show that, at and for a long time prior to the day in question, boys of various ages, and adults, almost daily jumped on the defendant's trains and cars on the low line and the connecting track near the depot in the canyon, particularly during switching operations, and rode for shorter or longer distances, sometimes hanging on the sides of the cars, something riding on top, and sometimes on the footboard of the engine; so, too, on the high line, men and boys of various ages frequently boarded the defendant's trains, going to and coming from the mines, and rode for longer or shorter distances; and that all this was done in plain sight of the train crews, for the most part on trains not intended for passengers, without molestation or objection or any effort on their part to put them off, and without demanding or collecting fare. On two occasions a brakeman had invited two or three boys to ride in the caboose with him on the high line for a bunch of wild flowers which they had picked. The record further recites that there was no direct evidence that any officer or agent of the company, other than train operatives such as conductors, brakemen,

engineers, and firemen, had permitted boys or men to ride; but the evidence was such (so recites the record) that a jury might find that such a practice was so general, notorious, and long continued that the defendant's officers knew thereof, or ought to have known of it.

On the day of the accident, the plaintiff and five other boys, from eight to thirteen years of age, about two o'clock in the afternoon, started from near the depot in the canyon carrying two guns, intending to shoot squirrels and birds. They climbed the side of the mountain until they reached the high line. They then walked down that track shooting at squirrels and birds, and roamed about the country in the vicinity of the railroad. They kept on in this way till they came to a point on the high line called Midas, a passing track. There, at about four o'clock, they saw, about half a mile away, an ore train coming up the canyon from Welby to the mines. It consisted of an engine, twenty-eight empty ore cars, and a caboose at the rear. The engine was a Mallet engine, with a double set of driving wheels. Its tender was nearly as long as an ore car. The crew consisted of an engineer and fireman on the engine, a head brakeman on the pilot, and a conductor and rear brakeman in the caboose. When the boys saw the train coming, according to the testimony of some of them, one said, "Here comes the train. Let's catch it. We'll get home quicker." According to others, one of them said, "Here comes a train. Let's ask the engineer for a ride"—to which the others replied, "All right, that's a go." Ammon Lawhorn, the plaintiff's brother, and Albert Ray, the two oldest boys, each about thirteen years of age, then left the other four and walked farther down the track towards the train. It soon came along, going from six to nine miles an hour. The two boys were on the engineer's side of the track. The engineer was in the cab, the fireman shoveling coal, the head brakeman on the pilot of the engine, and the conductor and rear brakeman in the caboose. One of the boys hallooed to the engineer, as he came opposite them, "Give us a ride." The engineer replied, "All right, there are plenty of cars in the train," and pointed to the rear. They boarded the

train, Ammon getting on the step near the front end, and
Albert on the step near the rear end of the same car, and
rode either standing on the steps or sitting on the side of the
car as they passed the other boys. The two were in sight, but
not in the hearing, of the others, when the two boarded the
train. The four, including the plaintiff, were also on the
engineer's side of the train as it proceeded up the canyon.
Before it reached them, some discussion was had as to which
of them should ask the engineer for a ride. It was decided
that George Ray, twelve years old, should do so. When the
engine was opposite them, George hallooed to the engineer
and said, "Give us a ride." The engineer "nodded yes," and
pointed to the cars behind the engine, indicating that the
boys might board the train. There was some conflict in the
evidence as to which car the plaintiff boarded. Some wit-
nesses testified that he got on the car immediately behind
the car his brother was on; others that he got on the sixth
or seventh car from the engine. There were two ladders on
the outside of the cars, one near the front, and one near the
rear, end. The cars extended about two and one-half feet
over the rails. The plaintiff was a boy of average intelligence
and strength for one of his age. He attempted to mount
the ladder near the front end of the car. He failed, and fell
to the ground, clear of the rails and the car. He arose and
tried to mount the rear ladder. One of the boys, George
Ray, testified that between the two attempts he told the plain-
tiff not to get on, that it was dangerous, and that the plain-
tiff replied, "By gosh, I will get on. If Ammon gets home
before I do and does the chores, I'll get a licking." This
conversation was denied by the plaintiff. The plaintiff suc-
ceeded in climbing the ladder on the second attempt. He
rode a car length or two, when he lost his hold, as he was
climbing over the side to reach the inside of the car, and fell
to the ground between the end of the car he had mounted and
the one next behind it, and was run over and injured.

The record further recites that evidence was introduced by
the plaintiff tending to show that shortly after the engineer
passed the four boys, and just as the plaintiff attempted to

board the train the first time, the engineer looked back out of the cab window at him, and then, putting his head back in the cab jerked the train, thereby causing the plaintiff to fall the first time. The engineer then again looked back at him and grinned; that immediately thereafter the jerk was twice repeated, the last time just as the plaintiff was climbing over the side to reach the inside of the car; and that the jerk caused him to lose his hold and to fall to the ground between the ends of the cars. George Ray ran along the train until he caught up with Ammon Lawhorn, and shouted that the plaintiff had been run over. Ammon jumped off and ran back. By that time the caboose had passed the plaintiff a car length or two. Ammon ran towards the caboose, shouting to the men inside. The air brakes were applied and the train stopped. The plaintiff was placed in the caboose and taken to the depot, where he received medical attention. There is further testimony tending to show that the head brakeman and the fireman also saw the boys and heard the conversation between them and the engineer. The conductor and the rear brakeman were in the caboose; but there is no evidence to show that they had knowledge of the boys' presence until after the accident. The record further recites that evidence was adduced by the defendant tending to show that no such custom or habit existed as was testified to by plaintiff's witnesses; that train operatives were greatly annoyed by boys who, against the protest and objections of train operatives, boarded and hung on cars; that they drove and warned them away whenever they saw them about the cars, and did not permit or consent to their boarding or riding on them; and that, on the day in question, neither the engineer nor any other train operative gave the plaintiff or any of his companions permission to ride on the cars, and had no conversation with any of them, and did not jerk the train, as testified to by the plaintiff's witnesses. There was also testimony tending to show that in the ordinary operation of the train there would be jerks and vibrations of the cars which could not be avoided; but that jerks and vibrations might also be caused by the application of air brakes by the engineer and

suddenly releasing them, or suddenly shutting off and quickly turning on steam.

The case was tried to the court and a jury. A verdict was rendered in favor of the plaintiff. The defendant appeals.

The assignments of error relate to the charge. The substance of four or five paragraphs of it, relating to plaintiff's evidence and theory of the case, is: If the jury found that the plaintiff, by reason of his age and want of intelligence, was not capable of appreciating the danger of getting on cars in motion and riding thereon; that men of ordinary prudence and intelligence, situated as were the train operatives, would have appreciated the dangerous situation of a child, such as plaintiff, in attempting to board or ride on cars in motion; that the train operatives saw him along the track and had reason to believe that he intended to, and probably would, mount the cars in motion, or would attempt to do so; that railroad men of ordinary prudence would have appreciated that such an act, on the part of such a child, was, under the circumstances, accompanied with danger to life or limb, and would probably result in injury; and that it appeared to them, or to a person of ordinary prudence, that the plaintiff, by reason of his age and want of intelligence, was not capable of appreciating the danger—then a duty was owing from the train operatives to exercise ordinary care to refrain from conduct that would probably result in injury to him, and to take such affirmative precaution, if any, with a view of keeping him from being injured, as appeared necessary to railroad men of ordinary prudence and experience in the business, and to exercise ordinary care to prevent him from getting or riding on the cars. The court further charged that if, under the facts and circumstances enumerated, the engineer consented, or indicated consent, to the plaintiff to get on the train in motion, that a person of ordinary prudence, under the existing circumstances, would not have given, or indicated such consent to a youth of apparent immaturity and tender years, and apparently lacking in strength and experience to attempt with safety to mount and ride on the cars, and that the plaintiff, by reason of such consent or indication, got upon

the cars, and did not, because of his tender years and inexperience, appreciate the attending danger, then the engineer was guilty of negligence; and if the plaintiff, in attempting to mount the cars, or after he had mounted them, fell therefrom and was injured, not as the result of a sudden jerking of them by the engineer, but of a vibration naturally connected with their movement, he was entitled to recover, unless the jury found that he was guilty of contributory negligence as otherwise in the charge defined. The defendant proposed requests on the theory that the plaintiff, under all the evidence, was a trespasser, and that the train operatives owed him no legal duty whatever, except to refrain from wilfully or wantonly injuring him after discovering his presence, and to use ordinary care to avoid injuring him after seeing or discovering him in a perilous position.

The court refused to so charge on the whole case, but, in effect, did so on the defendant's evidence and theory. The charge in such respect is:

"You are instructed if the plaintiff attempted to get on the train at the time of his injury without any permission from any of the employees of the defendant company, and was not induced to board the train in question because of any custom or habit on the part of children to ride defendant's trains without objection on the part of defendant's employees, then you are instructed that the plaintiff was a trespasser in attempting to board the train at the time of his injury and the only duty which the railroad company and its employees owed to him was to refrain from wilfully or wantonly injuring him, or if he was actually seen in a position of peril, then to exercise ordinary care to avoid injuring him. If you should find that the plaintiff fell from the car because of any jerk or jar or vibration, due wholly to the ordinary movement of the wheels along the rails or to the fact that the car he was attempting to ride was rounding a curve, you have no right to return a verdict against the defendant on the theory that the engineer wantonly or recklessly or with gross negligence jerked the train with his engine, unless the engineer knew the plaintiff to be in a position of

peril, and the engineer could have avoided the jerk or jar by the use of ordinary care."

. The complaint made is that the court, even on plaintiff's theory and evidence, erred in stating that a duty was imposed on the train operatives to use ordinary care to avoid injuring the plaintiff or to prevent him getting on the cars. It is urged that the charge in such respect was without the issues and is against law. In support of this, it is said that in the complaint it is not alleged that a duty was imposed on the defendant to prevent children or the plaintiff from boarding cars, or that the train operatives failed in such particular, or were guilty of such a specific omission of duty. There are no such direct allegations in the complaint. But such direct averments were not essential. The question is, Were there sufficient facts alleged upon which a legal duty arose to use care in such particular and to show a breach thereof? We think there were. It is alleged that the defendant was in the habit of permitting persons, especially children, to ride on its freight trains, without warning them of the danger; that it was dangerous, under the circumstances, for children to board moving cars, but that the defendant habitually permitted and invited them to do so without warning them of the danger; that, on the day in question, the engineer and other members of the train crew knowingly invited and permitted the plaintiff, an infant nine years of age, to board the train without warning him of the danger, and, upon observing that he was about to board the train, wantonly and negligently jerked it, throwing him to the ground; that the defendant knowingly and negligently suffered and permitted the plaintiff and other children to board and ride upon its freight trains, and knowingly and negligently failed and omitted to make objections thereto; and that the plaintiff, without warning of the danger, was, by reason of such custom and habit, permission, invitation, and consent induced to mount the train, and was injured. We think these allegations are sufficient to justify the charge. We are also of the opinion that, upon the evidence on behalf of the plaintiff, a legal duty arose on the part of the train operatives to use care.

Appellant has argued that no affirmative duty arose to use care until the plaintiff was actually seen or discovered in a position of peril; then a duty arose to use ordinary care to avoid injuring him, otherwise no affirmative duty whatever arose only a passive duty to refrain from wilfully injuring him upon discovering his presence. Many cases are cited by appellant where such a rule is announced. We think in nearly all of them the doctrine, as applied to the facts of the respective cases, was properly applied. But, as can be seen on a reading of the cases (which will be noted by the reporter), the facts there and here are very dissimilar. This dissimilarity the appellant seemingly has regarded of but little importance. What particularly distinguishes this case from those cited and relied on by the appellant is the evidence in respect of: (1) The habit and custom of children and others, without objection of any kind, boarding the defendant's cars and trains in the presence and with the knowledge and acquiescence of train crews in charge of its cars and trains, and that such custom or practice was so general, notorious, and long continued as to impart actual or presumptive knowledge thereof to the defendant; (2) the permission which the engineer gave the plaintiff and his companions, on the day in question, to board and ride on the train; (3) the plaintiff's boarding the car by reason of such custom, practice, and permission; (4) the youth and inexperience of the plaintiff as bearing on his knowledge and appreciation of the danger, and his ability to guard against it; (5) the discovery of his presence along the tracks under the circumstances heretofore stated, and his efforts to board the car, and his position thereon, noticed and observed by the engineer operating the train, and who had given the plaintiff and his companions permission to board it; (6) the engineer's knowledge—or what must be presumed of every man of ordinary intelligence, knowing and seeing what the engineer here knew and saw—of a perilous situation and danger of a child of plaintiff's age boarding cars in motion, and climbing over the sides of them, under the circumstances disclosed by the record. Viewed from such facts, a charge that no duty arose,

except abstention from wilful and wanton injury, would have been erroneous. When the charge complained of is looked at as a whole, and is viewed in connection with and applied to the evidence as adduced by the plaintiff, we think it a correct statement of the law. And as the court fully submitted the case to the jury on the defendant's theory and evidence, and upon statements of the law, as requested by it, we think it has shown no just ground for complaint.

The judgment of the court below is therefore affirmed, with costs. Such is the order.

McCARTY, C. J., and FRICK, J., concur.