# Louisville & Nashville Railroad Company v. Bennett's Administrator.

(Decided February 24, 1925.)

## Appeal from Bell Circuit Court.

1. Railroads—Railroad Held Not Liable for Death of Boy Jumping from Train Without Knowledge of Trainmen.—Railroad was not liable for death of boy who was riding on freight train without knowledge of trainmen, and who was killed in jumping from train while it was moving, though trainmen anticipated that boys would be on train, since boy was trespasser, or at most a licensee, to whom the trainmen owed no duty until they discovered him in place of danger.

2. Railroads—Rule as to Duty to Trespassers on Trains Applies to Infants.—In general, rule that railroad employees owe no duty toward trespassers or licensees on freight trains, unless and until they are discovered in a place of danger, applies to infants as well as to adults.

3. Railroads—Trainmen should Endeavor to Prevent Trespassing on Trains.—Freight train crews should use every reasonable endeavor to prevent boys and men from trespassing on trains.

LOW & BRYANT and WOODWARD & WARFIELD for appellant.

B. B. GOLDEN and E. F. BAKER for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Chester Bennett, a boy thirteen years and eight months of age, either jumped or fell from the side of a moving freight train, and received injuries that produced his death. Alleging that this was caused by the negligence of the defendant company, his administrator sued and recovered a judgment for $4,000.00.

On this appeal it is insisted that a peremptory instruction should have been given in defendant's favor at the close of plaintiff's evidence, none other being introduced.

The injury occurred at Wessel, a station on a coal line extension of the L. & N. R. R. running from Pineville to Kettle Island, a distance of about six miles, through a populous section, there being seven stations, including the termini. This line has been in operation for ten or twelve years. There are one passenger and one freight train running each way daily. The freight train

out from Pineville delivers freight and places empties at the mines. On its return it carries out the loaded cars. For many years it has been the habitual practice of men and boys of different ages to ride daily upon the freight trains. Some crews have objected to this; trains have been stopped and parties ejected therefrom who would again board the train when it started; arrests have been made and fines inflicted in some instances.

On the other hand, other crews have encouraged the practice by receiving candy and cigarettes from parties so trespassing; and it appears that such conduct is generally permitted without objection, though but one train-man is identified by name as openly encouraging it, and he left the run several years ago.

Deceased had indulged in this practice for two or three months before his death. He had been warned against so doing by others, and it seems that his father objected to the practice, though he did not know his son was so doing.

On the day of the injury a party, including intestate, boarded the train at Wessel and Jensen and rode the empties up to Kettle Island, a distance of three or four miles. Upon arrival the crew placed the empties, backed up the loaded cars and had their dinner at the caboose, which was attached to the engine and in front of the loaded cars. The boys remained around the rear end of the train until it started and then climbed up the sides and on top of the cars. One of them riding on the front end of the fifth car from the rear and abount fifteen cars from the front, states that just before reaching Wessel the deceased came forward from the rear of the car upon which witness was riding and climbed down the ladder on the opposite side from him and he did not see him afterward. Another who was seated on the same side of the train some three or four cars in front of this one states that the deceased descended the ladder and as he reached the stirrup either jumped or fell from the car and struck the cattle guard. Witness had no means of informing the train crew when the train stopped, as they had taken the engine up the switch to the mines. The boys returned to where the deceased lay.

The only other eye-witness was seated on his wagon at Wessel, about fifty yards from the cattle guard as the train passed. He saw Chester swinging from the side of the car with his foot in the stirrup, but the train ran by a car on the siding which obstructed his view, and he

did not see the accident. This was on the opposite side of the track from the platform, the inference being that Chester anticipated that his father would be at the station and was trying to avoid him. He received a fractured skull, was carried home and died a few days later without regaining consciousness.

It appears that the train crews were changed from time to time and none of those on the train at the time of the injury was identified as having encouraged or knowingly permitted such trespasses theretofore, nor is it positively proven that any of them saw or knew that the boys were on the train, as they were in the caboose next to the engine, and the boys were on the cars from the middle to the rear of the train. However, there was but one train each way daily and we may infer that the crew were familiar with the practice. Also the party had gone up to Kettle Island on the train and their presence must have been discovered by the trainmen; indeed, one of the brakeman saw and talked to the boys while at Kettle Island, and perhaps the crew could have anticipated that they would return on the train.

As it is not claimed that any of the trainmen saw the intestate on the side of the car or at all, at the time of the injury, no duty devolved upon them by reason of a discovered peril.

Under the facts did they owe him any other duty?

From what has been said we may assume that the trainmen anticipated a return of the party on this train, but if such was the case those so returning remained trespassers, or at most mere licensees, present by sufferance and to whom the employes would ordinarily owe no duty, unless and until they discovered them in a place of danger, Dalton's Admr. v. L. & N. R. R., 22 Rep. 97; and in general this rule applies to infants as well as adults. L. & N. v. Webb, 99 Ky. 332; Monehan v. S. Cov. & Cinti. St. Ry. Co., 117 Ky. 771; Swartwood's Gdn. v. L. & N. R. R. Co., 129 Ky. 247; L. & N. R. R. Co. v. Thornton's Admr., 22 Rep. 778; I. C. Ry. Co. v. Gastineau, 83 Ky. 119.

In the Webb case plaintiff was eleven years of age. He occasionally assisted in unloading freight for which the conductor would permit him to ride from the station to the water tank. On the day of his injury other boys assisted in unloading the freight and Webb arrived after they finished so doing, but rode with them to the tank

without anything being said by the conductor. On the return trip Webb took hold of a ladder on the side of a car and rode for some distance. In getting off his foot struck a pile of coal and went under the wheels.

The court assumed that the infant appellee rode to the tank on the caboose, and that the conductor saw him there and said:

> "He was not carried to a place where danger was naturally to be apprehended, nor was there any evidence that indicated that the infant appellee was so deficient in intelligence, by reason of immature age, or the want of natural capacity, as to render it necessary that especial care and watchfulness should be exercised to prevent him from exposing himself to danger whenever it might become apparent."

In another part of the opinion it is said:

> "In order to render appellant liable it was necessary to prove that the conductor of the train persuaded or invited the infant appellee to get on the train and ride to the water tank; that the accident that happened there in which he was injured was one that was likely or might reasonably have been expected to happen to him in the ordinary or natural course of events; that the agents or servants of appellant negligently failed to exercise care for his protection commensurate with the danger to which they had voluntarily exposed him; and that the accident did so happen, resulting in his injuries, without the intervention of any other independent efficient cause."

In the Monehan case a child six or seven years of age boarded the rear steps of a street railway car on the opposite side from that on which the conductor received passengers. The doorway on his side was closed and the conductor did not see him. The car started and attained a high rate of speed. The infant was jolted from the step and injured.

He was held to be a trespasser to whom the employees owed no duty until his peril was discovered, notwithstanding his infancy and practice of other children in so boarding the cars at that place.

In the Swartwood case the petition alleged an injury to a child of eight who boarded a moving car upon a city

street near a watchman, it being alleged that numbers of children, including plaintiff, did this habitually, but it not being alleged that he was seen by the trainmen on this occasion. In upholding a judgment sustaining a demurrer to the petition we said:

> "It is a fact of which we all know that railroads traverse streets and lots in our cities on their grade; that there is little or no protection against trespassing upon the railroad tracks; that children and others do so in spite of the well known dangers of the practice. . . . The habit of such trespassing, including perhaps the childish tendency and practice of clambering onto the moving cars to get a short free ride, is well known also to everybody, including of course the railroad people. If the operators of the train know of the actual presence of such trespassers, for such they are, they are required by the humaneness of the law to not injure them if with the means at their command they can avoid doing so. Nor will the inconvenience and annoyance entailed be counted. The courts have never gone further than that."

It is true that it is dangerous for an infant of tender years to board or alight from a moving freight train or to ride upon the side of a freight car, and if the trainmen discover one so doing a duty arises to protect him from such danger.

The novelty and a sense of danger in this practice appeals to the recklessness of childhood, and in a recent case we held that where a conductor invited and encouraged an eight-year-old child habitually to board a train at a certain place, that his crew assumed the duty of anticipating that such a child would continue to do as he had been permitted, and the further duty of exercising ordinary care to look out for him at that place and protect him from injury. L. & N. v. Steele, 179 Ky. 605. But the court was careful to distinguish that case from those cited, *supra,* and with reference to the Swartwood case said:

> "It will be observed that in that case there was no evidence, as there is in this, to show that the conductor habitually or at all permitted and encouraged boys to board the cars, and this, it may be remarked,

is the only feature of the case we have on which the liability of the company can be put, aside from the liability arising to protect Noble after his peril was discovered and which will be later discussed.''

Clearly this case falls within the line of cases first cited. Here there is a lack of evidence that the conductor or any one of the crew upon the train doing the injury knew or had ever seen or spoken to the deceased. None of the train crew saw him boarding or attempting to alight from the train. While it may be inferred that they knew there were some boys on the train, there is no evidence that they knew an infant of tender years was thereon; and it can hardly be said that they should have anticipated that some of the party would endeavor to alight in the manner indicated by the evidence.

Fourteen-year-old boys frequently ride passenger trains alone and unattended and if such passenger, to whom the company owes the highest degree of care, should, in order to avoid meeting his father or for any other reason, undertake to alight from the wrong side of a moving train without the knowledge of the employees and thereby be injured it could not be said that the company had failed in the. discharge of any duty toward him. If not, no higher degree of care should be imposed upon them in the protection of a trespasser on a freight train.

Certainly such crews should use every reasonable endeavor to prevent boys and men from trespassing on their train, but it can hardly be contended that the railroad company is required to police its trains to protect trespassers from injury, or to stand guard over them at all times to prevent them from jumping from the trains. To so hold would be to demoralize the service and destroy the purpose for which the company is organized. Hence in no aspect of the case was a recovery warranted.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.