ARTHUR LOUELLEN VEST *v.* CHESAPEAKE & OHIO RAILWAY COMPANY

(No. 8340)

Submitted May 6, 1936. Decided May 19, 1936.
(As modified on denial of rehearing, July 10, 1936.)

KENNA, JUDGE, dissenting.

*Fitzpatrick, Brown & Davis* and *C. W. Strickling,* for plaintiff in error.

*Lilly & Lilly, A. L. Russell* and *R. J. Thrift, Jr.,* for defendant in error.

HATCHER, PRESIDENT:

This action involves the duty of a railroad company to small children, who, at a certain place, habitually boarded a slowly moving freight train.

A path used by school children crossed a railroad track about one thousand feet below a water column. The plaintiff, aged six years, and other small children were returning home from school along that path on October 23, 1935. They arrived at the track coincident with the arrival of the train in question. Since it was stopping at the water column, its rate of speed at the path was just a few miles per hour. The plaintiff and several of his companions climbed on the train. He fell off and suffered practically the complete loss of an arm and a leg. For those injuries, he recovered herein a judgment of $50,000.00.

The train in question stopped at the water column daily between three and four o'clock P. M. During the school months, the train usually arrived when the children were on the path returning home from school. A number of witnesses testified without contradiction that during the school months for several years before plaintiff was injured, it was the constant practice of the school children to board that train and ride until it stopped at the water column. A witness who had lived in sight of the track for about four years said: "Ever since I lived over there the children always got on the train; the train pulled up slow, and they would get on the train and ride it. I could hear them playing along and riding the train; I don't know how many times; about every evening because I got in the practice of watching those children." Another witness who lived close to the track testified that

practically every school day, she saw some of. the school children, ranging in size from big girls to "just little tots" hop the train; and that they would do so at times in the presence of the train crew, whom she never heard make any objection.  One school boy, aged thirteen years, who participated in the practice, testified that the school children "from the primer on up would * * * grab the train and just make a play toy of it, and the brakemen see them and just say 'Hello'."  Another boy, also aged thirteen, who had participated in the practice for about four years prior to plaintiff's injury, testified that the school children habitually boarded the train without objection from the train crew and that on one occasion when three boys were jumping on and off the train, a brakeman said to them:  "If you are going to ride the train get on and ride and quit hopping on and off."

The train crew consisted of the engineer, fireman, conductor and two brakemen, all of whom were used as witnesses by defendant.  The engineer said he did not see the children on the day plaintiff was injured; *but was not questioned as to the practice of the children to board the train*.  The fireman testified that he did not see the children on that day and did not know of the practice. *Neither the conductor nor the brakemen were questioned as to seeing the children prior to the accident or as to the practice*.  The fireman's ignorance, alone, cannot overcome the positive and detailed evidence of plaintiff's witnesses regarding the practice.  It must be taken as fully proven, and as knowingly permitted, if not actually invited by the conductor and the brakemen.

The defendant tried the case on the theory that none of the train crew saw the plaintiff; that he was a trespasser; and that in the absence of actual knowledge of his danger, they owed him no duty.  That theory was based on *Angeline* v. *Ry. Co.*, 99 W. Va. 85, 128 S. E. 275, 43 A. L. R. 34, which does hold that a railroad company owed no duty to a trespassing child except to refrain from knowingly injuring him, and that it is not the duty of a train crew to police the cars when in motion to pre-

vent children from jumping on the train. That holding, however, must be limited to cases factually similar to that case. There a child, after being warned by a brakeman not to ride a train, attempted to board the train surreptitiously and was injured. There a lone trespass was involved. Here, boarding the train was habitual and was done under the eyes and with the tacit permission of the train crew. Hence, the controlling facts in the two cases are dissimilar.

The *Angeline* case is reported in 43 A. L. R. 34, and is supported by an extensive annotation commencing on p. 38. An examination of the cases annotated fails to discover a single one with facts closely analogous to those of the instant case. Defendant has cited only two cases from the annotation, *Swartwood's Guardian* v. *Louisville & N. R. Co.*, 129 Ky. 247, 111 S. W. 305, 19 L. R. A. (N. S.) 1112, and *Louisville & N. R. Co.* v. *Bennett's Adm'r.*, 207 Ky. 498, 269 S. W. 549, both from Kentucky. In the *Swartwood* case, the court said of the attempts of children to board the train: "It is true it is known that such trespasses are probable; but they are sporadic." In the *Bennett* case, the decedent was approximately fourteen years old, and the opinion of the court was based on the duty of the train crew to boys of that age in contradistinction to the duty to children of tender years. Here, the facts that the attempts of children to board the train were habitual (during school months) and that the plaintiff was only six years old, clearly differentiate this case from the *Swartwood* and *Bennett* cases.

The summation of the annotator, *supra*, is "Railroad companies are ordinarily under no duty of keeping trespassing children from boarding their cars." We recognize that rule; but it is a general rule, formulated, as its words imply, to meet the ordinary case of trespassing. It was never designed to meet an extraordinary situation, such as that presented here, of license to children of tender years. After recognizing the general rule, the Supreme Court of Kentucky said in *Louisville & N. R.*

*Co.* v. *Steele,* 179 Ky. 605, 201 S. W. 43, 49, L. R. A. 1918D, 317: "But when as in this case, there is evidence to show that boys of immature age and discretion are habitually permitted by the conductor to jump on and ride moving trains then the company (railroad) voluntarily assumes the duty of anticipating that they will do what he has permitted and consented that they might do, and the further duty of exercising ordinary care to look out for and protect them from injury." After recognizing the general rule, the Supreme Court of Georgia likewise said in *Ashworth* v. *Ry. Co.,* 116 Ga. 635, 43 S. E. 36, 38, 59 L. R. A. 592: "But when the right of way of a railroad company extends through a place used by a number of children, of ages varying from 6 to 15 years, as a playground, and when these children are accustomed continuously, every time the train enters the playground when they are upon it, to swarm upon the train and ride to the limits of the playground, and when the employes of the company know of this custom and make no objection to it, the company is bound to carry the burden which such a knowledge and tacit permission impose, and this burden would require the company to comply with the demands of ordinary care for the prevention of injury to the children." Under like circumstances, the Supreme Courts of Utah and Texas held that a railroad company could not shield itself behind the general rule. See *Lawhorn* v. *Rr. Co.,* 42 U. 244, 130 P. 470; *St. Louis S. W. Ry. Co.* v. *Abernathy,* 68 S. W. 539. A careful search has discovered no decision applying the general rule under similar circumstances. Confirmatory of our search, Watson on Damages for Pers. Inj., p. 293, says: "Where the presence of a child trespasser * * * would have been known, had reasonable care been exercised, there may be liability in negligence for injuries sustained—a doctrine acquiesced in by even the strongest advocates of the 'no duty to trespassers' rule." Consequently, we will not apply that rule here; but hold that the long duration of the practice of boarding this train with the tacit approval of the practice by

the conductor and brakemen, imposed on defendant the duty to anticipate a continuation of the practice and to make reasonable efforts to discourage it. For failure to do so, defendant must now respond in damages to the plaintiff.

Numerous errors are accredited by defendant to rulings of the trial court on evidence, instructions and argument which relate to the actual knowledge of some of the train crew that plaintiff was on the train. Since we are of opinion that proof of actual knowledge of his presence was not requisite, we see no prejudicial error in the rulings, or occasion to comment thereon.

Upon motion to set aside the verdict, the court order states the trial court "indicated that he was of opinion that the verdict was excessive and that same ought to be reduced to $25,000.00, but the plaintiff refused to remit any amount of said verdict and the defendant refused to agree to any such remittitur and insisted upon its motion to set aside the verdict", and that thereupon the court overruled the motion. Defendant charges that since the trial court considered the verdict excessive, he erred in not setting it aside. To have warranted such action, under our practice, the court should have been convinced that improper motives swayed the jury in fixing the amount of the verdict. The court order expresses no such conviction. The personal idea of the court on the quantum of damages, alone, should not overbalance that of the jury. The court "will not set aside a verdict simply because it would not have been willing, if sitting as a juror, to assess so large an amount." *Corrick* v. *Ry. Co.*, 79 W. Va. 592, 595, 91 S. E. 458, 459.

Defendant also charges error to several remarks made by counsel for plaintiff in his argument to the jury. The court directed the jury to disregard all the remarks we conceive to have been objectionable, except a statement of counsel, that in his experience, "railroad witnesses all see the same way." Statements to the jury of counsel's personal experience are essentially improper. In

this instance, however, the verdict was based on evidence practically uncontroverted by defendant's witnesses; so we see no prejudice to defendant from counsel's impropriety.

The judgment is affirmed.

*Affirmed.*

Upon petition to rehear:

The defendant asserts that at the trial, the plaintiff did not base his right of recovery upon failure to use due care to keep him off the train, but upon failure to use due care after he was or should have been discovered on the train. This assertion is not sustained by the record. The declaration, the evidence and an instruction given for plaintiff accordantly show that he based his demand upon a concurrence of the two failures. His assumption of a greater burden than was requisite, does not of itself militate against him.

Defendant says that because of its idea that plaintiff was relying only on negligent train operation after he boarded the train, it did not examine but one of its train crew (the fireman) on his knowledge of the children's practice to board the train, and if given another trial, can show that none of the crew knew of the practice. During the period of the practice, the train in question was operated by a number of different crews. (Eight different crews were operating the train under a "pool" arrangement at the very time of plaintiff's injury.) Consequently, the fact that one crew may not have known of the practice would not alone discredit plaintiff's evidence of the practice.

The petition is refused.

KENNA, JUDGE, dissenting:

I disagree with the views of my brethren in this case and, although I too am deeply moved by the ghastly injury sustained by this little child, am of the opinion that those views are at variance with the overwhelming

number of decided cases and, in fact, with the very cases used in the majority opinion to sustain the views therein expressed.

The majority opinion admits the general rule that railroad companies are under no duty of keeping trespassing children from boarding their moving cars. It then reasons that if children who would otherwise be trespassers, by reason of a long continued practice, known to the railroad, of boarding its moving cars at a certain point, have become invitees, then the railroad company is under a duty to keep them from boarding its cars, and if this duty is breached by the company and if children get onto the cars and are injured, the railroad company must respond in damages. Close analysis will disclose that this is nothing more than another way of stating the so-called "dangerous instrumentality" doctrine. It means that the railroad company is held to owe a duty *before* the person to whom the duty is owed gets upon its cars or premises. That duty is to keep the person off its premises, or off its cars, and consequently, arises before the question of status, whether of trespasser, licensee or invitee, can arise, since these various statuses attach only *after* the person is upon the cars or the premises of the railroad company. Since the duty is one that does not spring from the status of the person to whom the duty is owed, but, as has been pointed out, is a duty that arises *before* that status has been determined, and *before* the person has entered upon the premises or cars of the railroad, it is bound to be the affirmative duty of keeping people away from its premises and from coming upon its cars. Such a duty could arise only out of extraordinary danger to persons who might be allowed to come upon its premises or upon its cars. Otherwise, there would be no necessity for such a rule, and it is plainly seen that it is, in effect, an extended application of either the "attractive nuisance" or the "dangerous instrumentality" doctrine. It says to the railroad company that if it permits persons (and the logic of the rule would apply, it seems, as well to adults

as to infants of tender years) to come upon its cars, then the mere fact that it fails to keep them off its cars, renders the railroad company liable in the event they are injured. This is the obligation imposed upon an insurer, a higher duty than the railroad company owes to its passengers.

The fallacy of the reasoning in the majority opinion seems to me to lie in the fact that it treats the same act, namely, the failure of the railroad company to keep persons off its cars, both as determining the status of those persons when they board the cars, and as giving a right of recovery. In this case, there is evidence of but one breach of duty, even under the theory of the majority opinion. That was the duty to keep the children in question from boarding its cars. This one circumstance is used in the majority opinion as changing the status of the plaintiff from that of a trespasser to that of an invitee and also as furnishing the basis of recovery. The opinion reasons that since the plaintiff was not a trespasser but, owing to the failure of the railroad to keep him off its cars, had become an invitee, the railroad company owed him a duty. The opinion then proceeds to reason that since a duty *arose* from the failure of the railroad company to keep the plaintiff off its cars, that duty was also *breached* by the failure of the railroad company to keep the plaintiff off its cars. In other words, according to the majority opinion, the failure of the railroad company to keep the plaintiff off its cars operated both to fix the status of plaintiff and as the proximate cause of the plaintiff's injury. This could only be so in the event that the railroad company became an insurer of the plaintiff's safety after he had boarded its cars, and this is equivalent to treating railroad cars as dangerous instrumentalities against which it is the duty of the railroad to guard the public. I am not aware of any case that has gone so far as to state such a principle.

It seems plain to my mind that the true rule is that, whereas, the person who comes upon the right of way of a railroad company or boards its moving trains, with-

out invitation, is a trespasser to whom is owed only the duty to refrain from wanton injury, nevertheless, where the railroad knows, or is charged with knowledge, of the habitual use of its right of way, or of the habitual boarding of its moving trains at certain places and under certain conditions, and, with that knowledge, fails to put a stop to the practice, the persons affected, are raised from the status of trespassers to the status of licensees or, perhaps, of invitees, to whom a higher duty than that of merely refraining from wanton injury is owed. The matter of permitting such persons to come upon the premises of the railroad company or to board its moving trains affects only the status of such persons. When their status is fixed, then that status determines the duty the railroad company owes them. Some further act constituting actionable negligence must be shown in order to render the railroad company liable. Permitting persons to board its moving trains gives no right of recovery against a railroad company unless, in addition to the proof of the practice from which the higher status and the corresponding duty of the railroad company springs, there is proof that the duty of the railroad company, which arises from the status, has been breached. If the person is a trespasser, the duty is simply to refrain from wanton injury to him: if the person is an invitee, then the affirmative duty to exercise reasonable care for his safety arises. In this case, there is no proof showing that either of these duties was breached by the railroad company. The proof simply shows an established practice permitting children to board its slowly moving trains at the point in question, and the injury to the plaintiff after he had boarded a moving train of the defendant. This practice gave the plaintiff a higher status than that of a trespasser. This far I am agreed with the majority opinion. However, even with that higher status, there is no proof that the defendant breached any duty that it owed to the plaintiff in that higher status. The majority opinion sustains recovery because the railroad failed to "make reasonable efforts to discourage" the practice of children boarding its moving trains. This is awarding

damages simply because the permitted practice constituted the plaintiff an invitee.

This memorandum cannot be cumbered by an attempt to trace the principles it discusses through the decided cases. It is thought, however, that, without difficulty, the following references can be used to discover the authority upon which they rest: *Angiline* v. *Norfolk & Western Railway Co.*, 99 W. Va. 85, 128 S. E. 275, 43 A. L. R. 34, and note; *Walsh* v. *Pittsburgh Railways Co.*, 221 Pa. 463, 70 Atl. 826, 32 L. R. A. (N. S.) 559, and note at page 563; *Swartwood's Guardian* v. *Louisville & Nashville Railroad Co.*, 129 Ky. 247, 111 S. W. 305, 19 L. R. A. (N. S.) 1112, 130 Am. St. Rep. 465; *Cahill* v. *Stone & Company*, 153 Cal. 571, 96 Pac. 84, 19 L. R. A. (N. S.) 1094, and note at page 1139; 20 R. C. L., title Negligence, paragraph 81, page 92; 22 R. C. L., title Railroads, page 925, paragraph 171,