**LOUISVILLE & NASHVILLE RAILROAD CO., Appellant,**

**v.**

**Ronnie Dean SPENCE'S ADM'R (Charles Spence), Appellee.**

Court of Appeals of Kentucky.

March 4, 1955.

As Modified on Denial of Rehearing Oct. 28, 1955.

C. S. Landrum, C. E. Rice, Jr., Lexington, Stephen Combs, Jr., Whitesburg, for appellant.

Hinton & Young, Pikeville, Emmett G. Fields, Whitesburg, for appellee.

STANLEY, Commissioner.

The record is of the tragic death of a ten year old boy, Ronnie Spence. He and his brother, Billy, twelve years old, and two other lads, Bobby and Andy Ferrell, about the same ages, played hookey from school one afternoon in September, 1952, in order to avoid hypodermic injections of health serum. They walked some distance and hid in the bushes at a place, they said, where they would not be seen and waited for the train. After the locomotive and some cars had passed the point and stopped, the four boys got on the train inside a car and stooped down so they could not be seen. The train consisted of 48 empty coal cars. It backed up a spur track to a mine tipple. It appears the boys stayed inside the car until the train went by the schoolhouse, which was about two miles from the place they boarded it. Then they began jumping off and on the slowly moving train. With reckless abandon that it is hard for an adult to conceive, Ronnie Spence got between two cars and, holding onto the one in front of him, began to walk the rail as the train moved along. When he had gone a few feet, he stumbled or slipped and fell beneath the train. One of his companions called to him to lie flat and he did so momentarily but turned over and the wheels ran over him.

The administrator of the child's estate has recovered a judgment of $15,225 against the appellant, Louisville & Nashville Railroad Company, for his death and burial expenses.

The defendant introduced no evidence. It rested the case on a tendered peremptory instruction based on the grounds that there was no proof of its negligence and that the boy was guilty of contributory negligence as a matter of law. The peremptory was denied and the case was submitted to the jury by an instruction which predicated liability of the railroad company on the condition that its employees in charge of the train knew that Ronnie or his playmates were "riding on the train or jumping on and off the coal cars" and had failed to use or-

dinary care with the available means to avoid injuring the deceased boy and the other boys with him and such failure was the proximate cause of his death.

Evidence was admitted, over the defendant's objection, for the purpose of showing a custom of children to hop or ride coal trains on this spur track so as to convert their status of trespassers into that of licensees or invitees of a sort. The witnesses did not undertake to testify to anything that occurred on the day of the fatal accident.

■ In Durbin v. Louisville & N. R. Co., 310 Ky. 144, 219 S.W.2d 995, 997, we considered this character of evidence and held it to be irrelevant and incompetent, for "a person may be an invitee today, a licensee tomorrow, and the next day a trespasser." We expressed the view that even if there was such custom and the railroad employees knew of it, no additional duties were imposed on the company. But, accepting what was attempted to be proved as true, the court held that because of the absence of evidence that any of the crew knew of the presence or position of the boy who was injured on the train on the particular occasion, a directed verdict for the railroad company was proper. In the instant case the evidence adduced for the purpose of showing such custom and an implied permission for the deceased boy and his companions to ride the train, or of showing that their presence should have been anticipated and their danger should have been discovered, fell short of proving either permission or reasonable anticipation or discovery.

We look to the evidence tending to prove knowledge of the trainmen of the presence of these four little boys on the train just before the fatal accident.

The testimony of the children as to the distance traveled before they emerged from inside the coal car is variable and unsubstantial. It seems to have been about the time the train passed their schoolhouse. They got off and began running along the track and jumping on and off the train "next to the hill side", which was the east side of the track. The engineer was on the west side. How far the train had traveled while they were doing this is indefinite. One of them said it was "about 100 feet" and then in answer to a question as to how many car lengths, said "about 25." Another boy testified it was "about half a mile." All agree they were on the outside of the curve in the track. The oldest of the three testified no one on the engine saw them hopping off and on the cars. Ronnie's brother, Billy, testified that when Ronnie was killed, they were about 10 or 12 car lengths from the engine but had been closer to it. He was asked by the court if he knew whether any of the train crew saw the boys hopping on and off the cars and answered that he could see one man with his head out of the engine window looking in his direction, but "I don't know whether he saw me or not." Bobby Ferrell testified Ronnie Spence could not have been seen by the engineer because of the curve at the place where he jumped off the train and because he had got between the cars. Andy Ferrell, in answer to a question whether the trainmen saw him, stated that none of them saw him get on but after he got on, "I seen them looking at me." It was not the engineer but the "one toward the hill." Upon cross-examination, however, it was developed that the boy was referring to the time the boys first got on the train some distance away from the scene of the accident. He testified that it was then that "someone on the train saw us." There was no interrogation seeking to develop the matter further.

After Ronnie Spence had fallen under the train, two of the boys got over on the other side, ran towards the engine, 8 or 9 car lengths, and called to the engineer and told him of the accident. He stopped the train and went to the place where the child's body lay. Some of the boys told the engineer they had not been on the train but had been walking along the side of the track. The engineer then shook his finger at them and said, "Don't you lie. I seen you on the train." A Mrs. Seals testified that she arrived at the scene in a few minutes; that one of the trainmen, whom she believed had

come from the engine, "put his hands up over his face and said, 'Lord, what have I done?'."

■ We have a statute making it a misdemeanor for any person who is not a passenger or employee to "get on or off, or swing or ride on, or hang from the outside of, any engine, train or car while it is in motion or switching, or immediately preceding its moving or switching." KRS 277.250, 277.990. This makes a person doing such things a trespasser as a matter of law although he is known to be on the train. A railroad company is not required to police its trains to protect trespassers from injury. Louisville & N. R. Co. v. Bennett's Adm'r, 207 Ky. 498, 269 S.W. 549. But it is a humanitarian principle of justice that when a party violates a plain and manifest duty to protect human life and limb he will not be heard to say in justification that the person injured was merely a trespasser. And this rule of law that a party owes a negative or passive duty to a trespasser or bare licensee to refrain from injuring him after discovering his presence in a place of danger applies to trespassers on railroad cars. Louisville & N. R. Co. v. Popp, 96 Ky. 99, 27 S.W. 992; Swartwood's Guardian v. Louisville & N. R. Co., 129 Ky. 247, 111 S.W. 305, 19 L.R.A., N.S., 1112, 130 Am.St.Rep. 465; Louisville & N. R. Co. v. Steele, 179 Ky. 605, 201 S.W. 43, L.R.A.1918D, 317; Durbin v. Louisville & N. R. Co., 310 Ky. 144, 219 S.W.2d 995.

■ Ordinarily, trespassing children occupy the same position as trespassing adults except for special responsibility in case of attractive nuisances. Jones v. Louisville & N. R. Co., 297 Ky. 197, 179 S.W.2d 874, 152 A.L.R. 1259; Gray v. Golden, 301 Ky. 477, 192 S.W.2d 371. But the doctrine of attractive nuisance is not applicable to a moving car or train. Swartwood's Guardian v. Louisville & N. R. Co., 129 Ky. 247, 111 S.W. 305, 306, 19 L.R.A., N.S., 1112, 130 Am.St.Rep. 465. As said in the Swartwood case, "All who venture unbidden by the company and unknown to it upon its trains do so at their own peril, as they can have no right, and the company therefore owes them no duty, in such case. This rule also applies from the very necessity of the matter, without respect to the age or condition of the trespasser, for the court must deal with the question first of legal duty, not compassionable innocence." So the fact that a trespasser is a child does not enlarge his rights or raise any corresponding duty on the other party where no duty existed at all. The duty of a railroad company towards a trespasser, either an immature or mature person, infant or adult, rises only where and when its trainmen actually discover the trespasser exposed to danger and not before. Louisville & N. R. Co. v. Bennett's Adm'r, 207 Ky. 498, 269 S.W. 549, and earlier cases cited therein. When they find him in a situation of peril, there comes into existence the duty of exercising reasonable care under the circumstances to prevent injury. But discovery is not merely of presence but of peril; not of a possibility but of exposure to injury in time to avoid it by the use of the means or resources at hand. Frankfort & C. R. Co. v. Holder's Adm'r, 307 Ky. 11, 209 S.W.2d 722.

■ In the instant case, the burden was on the administrator to prove that the defendant's employees in charge of the train learned not only of the presence of the boy or his companions on the train, but discovered his exposure to injury in time to have avoided injuring him. We focus our attention upon the evidence which tends to prove this and the failure of the trainmen to protect him or them from harm.

■ We have the testimony of the little boys that at some indefinite time and place on the train someone on the engine was looking towards them. The undenied testimony that at some indefinite time after the accident but at that place the engineer, in refuting their statement they had never been on the train, stated he had seen them *on the train* is of doubtful competency under the res gestae rule. See Chesapeake & O. Ry. Co. v. Carter's Adm'r, 243 Ky. 268, 47 S.W.2d 1014. But accepting it in connection with the other testimony, proof is still lacking that any of the train crew saw any of

these boys hopping on and off the moving train or doing anything other than riding on the train. They were doing so where the engineer could not have seen them. There is no evidence they were ever seen in any place of danger or in any hazardous position nor in a place where injury was likely to be foreseen or apprehended or where special care and watchfulness should have been exercised to prevent them or the dead boy from exposing himself to grave peril.

In Louisville & N. R. Co. v. Webb, 99 Ky. 332, 35 S.W. 1117, 1120, some boys had been permitted to ride from a station to a water tank in a caboose of a freight train, although the conductor did not learn of the presence of the boy who was injured in the group until after the train was moving. On the return trip to the station, the boys, unknown to the railroad men, rode outside on the car ladders. From such a place the eleven year old Webb boy had jumped and fallen under the wheels of the train. The court held there was no liability on the part of the railroad company. In the course of the opinion it is said:

"He was not carried to a place where danger was naturally to be apprehended, nor was there any evidence that indicated that the infant appellee was so deficient in intelligence, by reason of immature age, or the want of natural capacity, as to render it necessary that especial care and watchfulness should be exercised to prevent him from exposing himself to danger whenever it might become apparent."

And the opinion adds that in order to hold the company liable, it was necessary that the plaintiff should have proved, inter alia, "that the accident that happened there in which he was injured was one that was likely, or might reasonably have been expected to happen to him, in the ordinary or natural course of events".

The facts in Louisville & N. R. Co. v. Bennett's Adm'r, supra, which quotes from the Webb opinion, are of like kind. A judgment for the plaintiff was reversed because a recovery was not warranted.

Other questions raised on the appeal are not reached for we are of opinion the evidence did not prove the boy's tragic death was caused by negligence of the defendant, hence, its motion for a directed verdict should have been sustained. Perhaps on another trial the evidence may be different, but on this record we are constrained to reverse the judgment.

Judgment reversed.