Louisville and Nashville Railroad Company v. Popp, by, &c.

CASE 20—PETITION ORDINARY—OCTOBER 23.

# Louisville and Nashville Railroad Company v. Popp, by, &c.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

96    99
d117 776

96    99
d129    253
129    254

96    99
135    810

1. RAILROADS—DUTY TO TRESPASSERS —Where the depot building and grounds of a railroad company in a city were not inclosed, it was the duty of the company, in backing a train for the purpose of coupling it to cars standing near the passenger platform, to have a servant on the platform or on the standing cars to warn trespassers or intruders on the track or on the cars of the danger, and its failure to do so was gross negligence, rendering it liable to plaintiff, an infant between five and six years old, who was on the platform of one of the standing cars, and who, by the sudden movement of the cars, was caught between the car and the " bumper" at the end of the track.

2. SAME.—Where an injury is the result of non-performance or violation of a plain and manifest duty for protection of human life or safety, the party thus acting will not be heard to say in justification that the person thus injured was merely a trespasser.

3. SAME—NEGLIGENCE AS TO INFANTS.—Conduct which, toward the general public, may be up to the standard of due care, may be gross or willful negligence when considered in reference to children of tender age and immature experience. Therefore, if defendant elected to keep uninclosed its passenger depot and adjacent premises so that children might go there, and tempted by curiosity or thirst, wander upon its railway tracks and into its cars, which were left open, it was the duty of its employes to know plaintiff's position and danger, and to be in a position at the proper time to protect him from injury by its running trains, especially as it was improper to couple cars on that track and at that place. And in this aspect of the case the company is liable to plaintiff, even if it would not have been liable to an adult.

4. SAME—INSTRUCTIONS TO JURY.—An instruction to the jury telling them to find for plaintiff if they should believe that any of the employes of defendant knew, or "had cause to believe," that plaintiff or the children who were with him were on either of the standing cars and failed to exercise ordinary care to protect them, was not prejudicial to defendant, as the phrase, "had cause," could not have been understood by the jury as meaning other than reasonable grounds to believe.

5. EXCESSIVE VERDICT.—As the injury to plaintiff necessitated the amputation of his leg above the knee, a verdict for $10,000 is not so excessive as to indicate passion or prejudice on the part of the jury.

HELM & BRUCE FOR APPELLANT.

1. The failure of a railroad company to inclose its depot and station grounds is not negligence, and the court should have so instructed the jury. (1 Rorer on Railroads, pp. 486 and 622; Davis v. Burlington, &c., R. Co., 26 Iowa, 549; Flint, &c., R. Co. v. Lull, 28 Mich., 513; I. & C. R. Co. v. Oestel, 20 Ind., 231.)

2. Appellant having used every precaution in coupling its cars at its passenger station by moving the cars slowly, ringing the bell and having a man upon the rear platform of the backing train, it can not be he'd negligent in failing to provide a watchman to inspect the standing cars before making the coupling.

3. There being no testimony that children were allowed to play around appellant's depot, nor that any of appellant's employes had knowledge of appellee's presence, but on the contrary, that appellee had been driven from the depot, there was no proof of negligence and the case should not have been submitted to the jury. (McDermott v. K. C. R. Co., 14 Ky. Law Rep., 437.)

4. The evidence does not support the charge of gross negligence, and no instruction should have been given on that hypothesis; nor do the facts justify the submission to the jury of the question of punitive

Louisville and Nashville Railroad Company v. Popp, by, &c.

damages   (L. & N. R. Co. v  Collins, 2 Duv.. 115; Chiles v. Drake, 2 Met, 146; Slater v. Sherman, 5 Bush, 213; Jacobs v. L. & N. R. Co., 10 Bush, 273; C., N. O. & T. P. R. Co v. Pruitt, 13 Ky. Law Rep., 475; 1 Sutherland on Damages, p. 716; L. & N. R. Co. v. Roberts, 10 Ky. Law Rep., 528; L. & N. R. Co. v. Law, 14 Ky. Law Rep., 850.)

5. The instructions were defective in being so abstract as to give the jury no substantial guide as to the law of the case.  (Wood v. Devers, 14 Ky. Law Rep., 84.)

6. The court erred in refusing to instruct the jury that it was not the duty of appellant to examine its cars before making a coupling to see if any children were in peril, and that if they believed the children were on the car without defendant's knowlege, and the coupling was made without any knowledge of plaintiff's perilous condition, they should find for the defendant.  (L. & N. R. Co. v. Hunt, 11 Ky. Law Rep., 827.)

7. In instruction No. 2, which tells the jury that if they believe the defendant knew or " had cause to believe " that plaintiff was on the car and failed to use ordinary care to protect him from injury, they should find for plaintiff, the words, " had cause to believe," were misleading to the jury.

8. The court should have given instructions as to the law considering the fact that appellee was a trespasser upon appellant's grounds.

9. A verdict of $10,000 for the loss of a leg is excessive.

Additional authorities cited in petition for rehearing.  (Murphy v. Lou. and Port. Canal Co., 9 Bush, 523; L. & N. R. Co. v. Schmetzer, 15 Ky. Law Rep., 195; Lloyd v. Pac. R. Co., 49 Mo., 199; I., P. & C. R. Co. v. Crandall, 58 Ind., 365; Tate v. Parrish, 7 Mon , 327; Clay v. Miller, 3 Mon., 149; Henderson Bridge Co. v. O'Connor, &c., 88 Ky., 329.)

LYTTLETON COOKE of counsel on same side.

BURTON VANCE, AUGUSTUS E. WILLSON and WILLIAM W. THUM for appellee.

1. The railroad was guilty of gross negligence in failing to have some one in a position to control and guard the sudden backward movement of the car through the public thoroughfare and to see that no one was in danger of being run over or crushed by it.  (Railroad Co. v. Potts' Adm'r, 13 Ky. Law Rep., 344; Railroad Co. v. Schuster, 10 Ky. Law Rep., 67; Conley v. Railroad Co , 89 Ky., 402; Shelby's Adm'r v. Railroad Co., 85 Ky., 229.)

2  It was gross negligence for the railroad employes, knowing of the presence of the helpless child about the depot grounds in the immediate vicinity of the two coaches, to move them without having first seen to it that the child was not upon them, nor in a position of danger

from their being suddenly moved. (Jacob's Adm'r v. Railroad Co., 10 Bush, 273; Railroad Co. v. Wolf, 80 Ky., 85; Bransom's Adm'r v. Labrot, 81 Ky., 639; Railroad Co. v. Gastineau's Adm'r, 83 Ky., 119; Railroad Co. v. Hunt, 11 Ky. L. R., 826; Smith v. O'Connor, 48 Penn., 218; Mackey v. Vicksburg, 64 Miss., 777; Keffe v. Railroad Co., 21 Minn., 207; Mullaney v. Spence, 15 Abb. Pr. N. S., 319.)

3. As the railroad company usually had a station master and a watchman in these depot grounds, whose especial duty it was to guard against injuries to children playing about the tracks and cars, their absence at the time of the injury to appellee was gross negligence.

4. Greater care is required in dealing with children of tender years than with persons of discretion, and conduct, which towards the general public might be up to the standard of due care, "may be gross or willful negligence when considered in reference to children of tender age and immature experience"

As the negligence shown by the evidence in this case was in reference to a child of tender age and immature experience, it was the duty of the trial court to submit to the jury, as it did, the question of gross negligence. (Bransom's Adm'r v. Labrot, 81 Ky., 639; Barret v. Southern Pac., 91 Cal., 299; Penso v. McCormic, 125 Ind., 116; Swift v. Staten Island, 123 N. Y., 645; Western, &c., R. Co. v. Young, 83 Ga., 512.)

5. The degree of appellant's negligence, whether it was ordinary or gross, was a question to be determined by the jury. (Railroad Co. v. Minogue, 90 Ky., 372; Needham v. Railroad Co., 85 Ky., 432; Railroad Co. v. Collins, 2 Duvall, 115; Railroad Co. v. Mahoney, 7 Bush, 237.)

6. The evidence in this case shows the railroad guilty of negligence greater than that frequently held by this court to be willful negligence under the statute. (Railroad Co. v. Potts' Adm'r, 13 Ky. L. R., 344; Railroad Co. v. Hunt, 11 Ky. L. R., 826; Eskridge v. Railroad Co., 89 Ky., 407; Railroad Co. v. Schuster, 10 Ky. L. R., 67; Conley v. Railroad Co., 89 Ky., 402; Shelby, Adm'r, v. Railroad Co., 85 Ky., 229; Bransom v. Labrot, &c., 83 Ky., 119; Railroad Co. v. Wolf, 80 Ky., 85.)

7. It is immaterial in this case whether the company's negligence was gross or ordinary, for it was the cause of appellee's leg being crushed off, of his suffering great pain, of his being wholly incapacitated for earning a livelihood, and of his being compelled to hobble through life pitifully crippled. The damages of $10,000 allowed for this injury are not excessive. (L. & N. R. Co. v. Mitchell, 84 Ky., 327; Akersloot v. Sec. Ave. R. Co., 49 N. Y. S. R., 231; Chicago Railroad Co. v. Wilcox, 33 Ill., 450; Ketchum v. Tex. P. R. Co., 38 La. Ann.; Ft. W., &c., R. Co. v. Robertson, Texas, June 6, 1891; Ky. C. R. Co. v. Kyle, 13 Ky. L. R., 862; L. & N. R. Co. v. Shivell, 13 Ky. L. R., 902; Ky. C. R. Co. v. Smith, 93 Ky., 449; Maysville, etc., R.

Louisville and Nashville Railroad Company v. Popp, by, &c.

Co. v. Herrick, 13 Bush, 122; A., T. & S. F. R Co v. Moore, 31 Kans.. 197; Chappin v. Railroad Co., 17 La. Ann., 19; City of Pan-ama, 101 U. S., 453; Railroad Co. v. Herbert, 116 U. S., 642; Railroad Co. v. Mares, 123 U. S., 710; Rockwell v. Railroad Co., 64 Barb., 439; Railroad Co. v. Montgomery, 57 Georgia, 562; The Washington v. Cavan, 9 Wallace, 513; Daniels v. Mo. P. R. Co. (Utah), Mch. 1, 1890 )

:8. As the appellee was of such tender age as to be wholly without the discretion or capacity to exercise the care necessary for his own safety, he could not be charged with contributory negligence nor with being a trespasser. (Bransom's Adm'r v. Labrot, 81 Ky , 649; Railroad Co. v. Gastineau, 83 Ky., 119; Railroad Co. v. Stout, 17 Wallace. 657; Smith v. O'Connor, 48 Penn., 218; Westbrook v. Railroad Co., 14 Am. State Rep , 587 and note; Stutzer v. Railway Co. (Minn.), 50 N. W., 690; State v. Doyle (Mo.), 17 S. W , 751; 1 Bishop Criminal Law, sec. 16; 1 Thompson on Neg., sec. 452; 2 Id., sec. 1182; Beach on Contrib. Neg , sec. 44 and authorities cited; R. Co. v. Gladman, 15 Wallace, 401; 40 Bar. (N. Y.), 264; Lynch v. Nuadin, 1 Ad. & El., 29; Birge v. Gardner, 19 Conn., 507; 1 Thompson on Negligence, 304 and 305; 9 East., 277; Mullaney v. Spence, 15 Abbott Pr. (N. S.), 319; Keffe v. Milwaukee R. Co., 21 Minn., 207; Coons v. St. Louis R. Co., 65 Mo., 502; Whirley v. Whitman, 1 Head, 610.)

9. Courts will rarely disturb the verdict of a jury in a case of negligence where the evidence is contradictory, and it is only where the jury are misdirected or the verdict is plainly against the evidence or obviously the result of passion or prejudice that the courts interefere. (R. Co. v. Mitchell, 87 Ky., 387; R. Co. v. McCoy, 81 Ky., 403; Hickman v. Southerland, 4 Bibb, 194; Hughes v. McGee, 1 Mar., 29; Reese v Lawless, 1 Mar., 59; Sibley v. Eastin, 1 Mar., 551; McCampbell v. McCampbell, 2 Mar. 114; Tonstall v. Bishong, 2 Mar , 521; Weisiger v. Samuel, Litt. Sel. Cas., 185; Talbot v. Talbot, 2 J. J. M., 5; Allen v. Sykes, 5 J. J. M., 614; Pleak v. Chambers, 7 B. M., 566; King v. Hanna, 9 B. M., 373; N. Y. Life Ins. Co. v. Graham, 2 Duv., 507; Pettis v. Smith, 2 Mar., 195; D. & N. T. Co. v. Stewart. 2 Met , 122; Owings v. Gray, 2 Mar., 520; Hunter v. Dickinson, 2 Mar , 546; Grimes v. Dearborn, 3 J..J. M., 61; Fitzgerald v. Barker, 4 J. J. M., 399; Thompson on Trials, Ed. 1890, vol. 2, sec. 1662.)

.JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellee, an infant between five and six years old, brought this action by his father and next friend to recover damages for injury to his leg, necessitating amputation above the knee, which was caught be-

tween a passenger car in motion and what is called
a bumper, placed at end of a railroad track in Louis-
ville, owned by appellant.

The injury was done, according to a map filed,
about five feet from Second street and one hundred
and fifty-five from west end of the passenger depot
building, which is about two hundred feet long by
twenty wide, and situated north of Water, between
First .and Second streets.  A passenger platform ex-
tends from First to Second street that, at its eastern
end, is about thirty-five, and on each side of the
depot building seven and one-half feet wide.   To a
line distant from west end of the building twenty-
five feet the platform is also thirty-five feet wide, but
from there to Second street only ten, the remaining
space north of and between it and the track, at end
of which is the bumper mentioned, being used for an
open roadway that extends from Second street to the
line referred to.

On the south as well as north side of the depot
building is a railway track, at usual distance from
edge of the platform, and used exclusively for pas-
senger traffic.   There are five other tracks farther
north, likewise extending to Second street, or very
near it, one of which, the most northern, runs di-
rectly into or through a freight depot building situ-
ated east of First street.   The others intersect the
two passenger tracks at unequal distances east of that
street, and on them are put idle passenger cars, though
neither one of those tracks is adapted or used ·for
transportation of passengers.

The evidence shows that two cars had been placed

and left stationary on that passenger track north of the depot building, the west end of one of them being near to the bumper. But precisely how long it had been done before appellee was hurt does not appear, though they were there when a Shelbyville train was backed to the depot building on that track, and remained there after it left. It, however, appears they were put there for the purpose of being attached to and forming part of an excursion train that left the station about four P. M. on a Sunday. And it was in the process of making up or completing that train by coupling to the two stationary cars four others backed on the track by a switch engine when appellee, at the time on the platform of that one nearest the bumper, received the injury complained of, and for which the jury returned a verdict in his favor for ten thousand dollars.

The ground relied on for reversal is error of the lower court in giving and refusing instructions.

The first of them given, which we will consider, is as follows: "If the jury shall believe from the evidence that the agents and employes of the defendant, or any of them, knew, or *had cause* to believe, that plaintiff or the children who were with him was on either of the two cars which were standing on defendant's track near Second street, and failed to exercise ordinary care to protect them from harm, when said cars were coupled with the train, and that by reason of the failure of said agents or employes to observe ordinary care, the plaintiff sustained the injury of which he complains, then the law is for the plaintiff, and the jury should so find."

It seems to us that instruction involves no more than the simple proposition, often approved by this court, that it is the duty of those operating a railway train to use reasonable effort to avoid injuring even a trespasser, when his peril is, or by diligent attention to and proper conduct of the business they are engaged at, might have been, discovered in time to prevent it. And such diligence and attention is especially imperative in a case like this. For though ordinarily a person of matured experience and capacity might remain on the platform of a car while being coupled to others, it would be extremely perilous for a child five or six years old to attempt doing it, or even to go near them. It is true the evidence does show that the engine and four cars were backed at the rate of only two miles per hour; but however slow may have been their movement, it was inevitable the two stationary cars would be jarred and pushed suddenly back, as did occur with the result of crushing appellee's leg.

The phrase, "had cause," used in the instruction, we think, could not have been understood by the jury as meaning other than reasonable grounds to believe, and was, therefore, not prejudicial to appellant. But it is contended there was no evidence tending to show those in charge of the train either knew or had cause to believe appellee was then on or near to either car.

It appears he, accompanied by three other boys about his age, except one who was nine years old, on their way, though not by the most direct route, home from some place east of First street, stopped on the platform at eastern end of the depot building, whence they were driven by the baggage-master. A passenger for

the Shelbyville train, before leaving, also tried to in-
duce them to go off, and another employe, probably en-
gineer of that train, endeavored to frighten them away
by threat to carry them to the country. But instead
of leaving the premises they went to west end of the
platform, and finally into the car, for the purpose of
getting ice water, which was given to them by two men
who, there is some reason to believe, though not satis-
factorily shown, were employes of appellant. After
getting the water, they loitered about the car, appellee
remaining on the platform of it, until the engine and
four cars attached were backed on the track in order to
make the coupling. The proof is the bell was ringing
as the train backed, and thereby is afforded some con-
firmation of the statement of a witness, who was at
that time on opposite side of Second street, that appel-
lee, seemingly frightened at the coming collision, called
some person to help him off the platform, and to escape
the danger endeavored to get on the bumper.

There is no direct evidence those in charge of the
backing train or any other employe actually saw him
on the car platform in time to avoid injuring him.
And whether they had reasonable grounds to believe
he was there, we will consider in connection with the
following instruction: "The fact that the said two
cars were standing upon the track uninclosed, and
that the plaintiff was injured upon one of them, are
not sufficient of themselves to render the defendant
liable in this action. But it was the duty of the
defendant to exercise ordinary care with regard to
said cars to prevent injury to any one by them; and
if the jury shall believe from all the facts and cir-

cumstances admitted in evidence that the defendant
or its agents or employes failed to exercise ordinary
care to prevent injury to others by said car, and that
the injury which plaintiff sustained would not have
been received by him but for the failure of said em-
ployes to observe ordinary care with respect to said
cars for the safety of others, then the law is for
plaintiff, and so should the jury find.''

There is, in our opinion, no difficulty in determining
whether, as a question of law, the servants of appel-
lant exercised due care to prevent injury to appellee,
for the legal rights and duties of railroad companies
have been heretofore, in analogous cases, fully and
clearly defined.

A railroad company has the right to exclusive use
and occupation of its private yard and tracks, except
at crossings, and is not bound, at such places, to look
out for intruders and trespassers; otherwise it could
not properly perform its duty to the public. (Ky.
Central R. Co. v. Gastineau, 83 Ky., 119; Conley v.
Cincinnati, &c., R. Co., 89 Ky., 402; McDermott v.
Ky. Central R. Co., 93 Ky., 408; Louisville & Nash-
ville R. Co. v. Hunt, 11 Ky. L. R., 825.) But the
place where appellee was injured is not, in mean-
ing of the cases cited, the private yard of appel-
lant, where others than employes have no right, nor
can be reasonably expected, to go, and where, as
a legal consequence, there is no obligation to look
out for them. It is not a place where turn-tables
are placed and used, as in the McDermott case; nor
where trains are usually and can be safely made up
or cars coupled, as in the Gastineau case; nor where

switching trains and changing cars are properly done, as in the Hunt case. On the contrary, the track in question is near enough to the depot platform for passengers to step off and on cars; within less than eight feet of the depot building, where the traveling public, composed of men, women and children, resort, and actually contiguous to and parallel with the open roadway from Second street; so that when appellee was injured, children or adults might go without obstruction upon that track, or even into the cars left standing thereon; and that children of all sizes were in the habit of going about the depot building and grounds for pastime and amusement was known to servants of appellant, as they testified. Moreover, the fact that appellee and companions went into the car on their own motion to get ice water shows they were familiar with the premises.

Therefore, while, as the lower court substantially instructed the jury, appellant was not legally bound to inclose its depot building and grounds, and leaving the two cars standing upon that track was not of itself negligence, still it was so manifestly dangerous to couple them at that place, and under existing circumstances, to the backing train, that active vigilance on the part of the employes was required in order to prevent injury to others. And failure to exercise it must, consistently with decisions of this court in other cases, be treated as gross negligence. For it has been held that to move, or permit moved, either a train or single car on a side track in a city or town where the public may go by license or custom, without a servant being in position to give warning of its approach. and

to control its movement, is, when death results, willful negligence in meaning of the statute on that subject. (Shelby's Adm'r v. Cincinnati, &c., R. Co., 85 Ky., 224; Conley v. Cincinnati, &c., R. Co., 89 Ky., 402; Louisville & Nashville R. Co. v. Potts, 92 Ky., 30.) And we see no reason why that rule should not apply in this case. For the employes undertook, not merely to back the train upon a track near the passenger platform, which is always dangerous when the premises are uninclosed, but to make up or complete the train by coupling it to two stationary cars within a few feet of the depot building, which, at best, is very narrow and contracted for a city like Louisville. It is true there was a brakeman on the western end of the moving train, but he was there simply to make the coupling, and could not see whether there were persons on either of the two stationary cars, or near to them.

The company had employed at that time a station master and watchman, both of whose services it must be presumed it deemed, and in our opinion were, necessary on such occasions, but neither of them was present to give warning of the peril of appellee and his companions, or aid in preventing injury to them. So, while the evidence conduces to show no employe of appellant was aware of the presence of appellee, it can not be assumed that they did not have reasonable grounds to believe he or some other person, infant or adult, might be in peril; much less can it be assumed it was not the legal duty of appellant to have some employe in a position on the platform or train to see to it there was no person in danger of being injured by the collision.

Technically, appellee was a trespasser, but, as said in the Conley case, when an injury is the result of non-performance or violation of a plain and manifest duty for protection of human life or safety, the party thus acting will not be heard to say, in justification, that the person thus injured was merely a trespasser. We do not doubt applicability of that principle to this case, for obviously to attempt backing a train and coupling cars at the place, and under circumstances it was done when appellee was injured, is violation and disregard of a plain duty.

There is another aspect in which the conduct of appellant's employes shows negligence of a reprehensible character. It was known to them that children of all ages were in the habit of resorting to the depot premises, yet not only were the two cars coupled to the backing train without any servant being in a position to warn appellee of his danger, but one of the cars, if not both, was left open, so as to invite and tempt children to enter, as appellee and his companions did do; and if the two men who gave them water were not actually employes, the fact is thus made apparent that the cars were left so open and exposed that any one, child or adult, might enter at will, no employe being present to prevent or warn them of the coupling process that would and did shortly take place.

In Bransom's Adm'r v. Labrot, 81 Ky., 638, it was held that conduct which, towards the general public, might be up to the standard of due care, may be gross or willful negligence when considered in reference to children of tender age and immature expe-

rience. And the court there quoted from 1 Thompson on Negligence, p. 305, this language: "It would be a barbarous rule of law that would make the owner of land liable for setting a trap thereon, baited with stinking meat, so that his neighbor's dog, attracted by his natural instinct, might run into it and be killed [citing Townsend v. Wathen, 9 Easu., 277], and which would exempt him from liability for the consequences of leaving exposed and unguarded on his land a dangerous machine so that his neighbor's child, attracted to it and tempted to intermeddle by instincts equally as strong, might thereby be killed or maimed for life. Such is not the law."

In our opinion, if appellant elected to keep uninclosed its passenger depot and adjacent premises, so that children might go there, and tempted by curiosity or thirst, wander upon its railway tracks and into its cars, it was the duty of its employes to know appellee's position and danger, and to be in a position at the proper time to protect him from injury by its moving trains and cars, especially as it was improper to couple cars on that track and at that place.

The only case in which this court is authorized to reverse a judgment on account of excessive damages is where, as provided by the Civil Code, the verdict appears to have been rendered under influence of passion or prejudice. In cases heretofore decided by this court, where the injury was not greater than that received by appellee, verdicts for as great amount have been sustained, and we see no reason for now departing from such precedents.

Judgment affirmed.