## Louisville & N. R. Co. v. Spoonamore's Adm'r.

May 23, 1939.

674

H. T. LIVELY and J. MILLER WHITE, WILLIAMS & DENNY, and C. S. LANDRUM for appellant.

J. M. ROBSION and FLEM D. SAMPSON for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The administrator of the estate of Ray Spoonamore, deceased, recovered a judgment against the Louisville & Nashville Railroad Company for the sum of $4,000, and the railroad company has appealed. A number of grounds were relied upon in its motion for a new trial, but all of them have been waived on this appeal except one; alleged error of the court in overruling appellant's motion for a directed verdict in its favor at the conclusion of all the evidence. This necessitates a review of the evidence.

Ray Spoonamore, a boy 17 years of age, was run over and killed within the corporate limits of the town of Brodhead in Rockcastle County by one of appellant's freight trains about 8 o'clock p. m. September 3, 1937. It was appellee's theory that the decedent, at the time he was struck, was walking on appellant's track at a point where its use by the public converted him into a licensee and imposed upon the railroad company the duty of keeping a lookout and giving warning of the approach of its trains, and that the employees of appellant in charge of its train on the occasion in question failed to observe these duties. It is appellant's contention that the evidence fails to show such a use of the tracks by the public at the point of the accident as to impose upon the operators of its trains the duty to anticipate the presence of persons thereon and to take the required precautionary measures to prevent injury to them, and that decedent was a trespasser to whom appellant owed no duty except to exercise ordinary care to prevent injuring him after his peril was discovered. Appellant also insists that the proof fails to show decedent was using the track as a walkway at the time of his injury, and that the manner in which he sustained his injuries is wholly speculative and conjectural.

According to the records of the railroad company, the train which struck Spoonamore passed through Brodhead at 8:12 p. m. There was no eyewitness. The decedent was found about 8:30 p. m. in an unconscious condition, lying on the main track between the rails. He had been struck north of the point where he was found, and his body had been rolled or dragged a dis-

tance of about 100 feet. He was taken to a hospital at Berea, Kentucky, where he died a few hours later without regaining consciousness. He was struck several hundred feet south of the northern corporate limits of the town of Brodhead, but outside of the built-up section of the town. A mill is located on the west side of the railroad tracks at the point where decedent was found, and on the east side of the tracks is an open field. North of the mill two paths, designated as Nos. 9 and 12 on a map filed with the record, lead from the railroad right of way in an easterly direction through the open field. Path No. 12 leads to a swinging foot bridge across Dix river, which runs parallel to and several hundred feet east of the railroad right of way. No. 9 leads from the railroad right of way through the open field, and connects with No. 12 near the swinging bridge. Two paths branch off from No. 9, one leading to a swimming beach on Dix river and one to a spring. The proof shows that these are well-beaten paths, 4 to 6 feet wide, and are used by the inhabitants of Brodhead in going to and from the swimming beach and the spring, and by persons residing east of Dix river in going to and from Brodhead. Most of the persons using these paths follow the railroad tracks to the business section of the town and to the railroad depot, a distance of 600 or 700 feet south of path No. 9. A large number of witnesses testified concerning the use of the tracks by the public, but none of them undertook to give a specific estimate of the number of persons using them during a 24-hour period. Several of the witnesses lived across the swinging bridge and made frequent trips to and from town. They testified that they used the paths across the open field and then followed the railroad tracks, a distance of about 600 feet, passing the point where the decedent was struck. On these trips back and forth they rarely failed to see other persons using the tracks as a walkway, and sometimes saw as many as 30 or 40 persons at one time using the tracks. This use of the tracks continued until 9 or 10 o'clock at night. The witnesses who testified showed considerable use of the tracks if that use had been confined to them alone, but all of them stated that on each trip they made they saw large numbers of people using the tracks. The appellant introduced proof which tended to show that not more than 10 or 15 persons used the tracks during the day, and not more than 8 or 10 persons used them between 6 and 9 o'clock at night. However, we think the evi-

dence was amply sufficient to authorize a submission of this issue to the jury.

While appellee's witnesses were vague and indefinite in their statements as to the number of persons walking on the tracks during a 24-hour period, yet they were specific in their statements concerning the number of persons using the tracks when they were in a position to observe such use. Any estimates by the witnesses of the number of persons using the tracks during a 24-hour period necessarily would have been guesswork. Each witness testified concerning the frequency of his use of the tracks and the number of persons seen on each trip, and when the testimony is read as a whole, it shows, if true, such frequent and habitual use by the public at the place of the accident as to put upon the appellant the duty of anticipating the presence of persons on the tracks. Appellee's evidence also tended to show that this use of appellant's track at the place of the accident had extended over a period of 12 or 15 years. The rule is well settled that where the public generally, with the knowledge and acquiescence of the railroad company, have continuously used the tracks for a long period of time, the presence of persons upon the tracks where so used must be anticipated, and the duties imposed upon railroad companies in respect to licensees must be observed. Cornett's Adm'r v. Louisville & Nashville Railroad Company, 233 Ky. 797, 26 S. W. (2d) 1031; Louisville & Nashville Railroad Company v. Vaughan's Adm'r, 183 Ky. 829, 210 S. W. 938; Willis' Adm'x v. Louisville & Nashville Railroad Company, 164 Ky. 124, 175 S. W. 18; Chesapeake & Ohio Railway Company v. Warnock's Adm'r, 150 Ky. 74, 150 S. W. 29. The rule is stated thus in the Restatement of the Law of Torts, volume 2, section 334:

"A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety."

Appellant's employees in charge of the train testified positively that the bell was ringing and the whistle was sounded as the train approached the place of the accident, but M. Hopkins, Morgan Harris, George

Hopkins, John Leece, and Leonard Woodall all testified that they were nearby, had their attention directed to the train, did not hear the bell ringing, and that the whistle was not sounded until after the train passed the point where the accident occurred. While this evidence was negative in character, it was sufficient, under the rule in this state, to take the case to the jury on that issue. Louisville & Nashville Railroad Company v. Bryant's Adm'r, 215 Ky. 401, 287 S. W. 245; Cincinnati, N. O. & T. P. R. Co. v. Jones' Adm'r, 166 Ky. 817, 179 S. W. 851.

It is finally insisted by the appellant that there was no evidence, direct or circumstantial, from which the jury could find the decedent was walking upon the track at the time of his injury and that the manner in which he sustained his injuries is wholly speculative and conjectural. The decedent lived with his mother about one mile from the town of Brodhead, and, in going to and from Brodhead, used the path leading to the swinging bridge over Dix river and then the railroad tracks between the mouth of the path and the business section of the town. He worked for various persons in the town, performing odd jobs such as carrying coal and cutting grass. He worked part of the time at Firth's Restaurant, which is located across the railroad tracks from the depot. He was seen in the restaurant about 30 minutes before he was injured. He started toward his home, but apparently was returning to Brodhead when he was struck by the train. Morgan Harris, who lived in the country, left the business section of town, walked along the railroad tracks, and started toward his home on path No. 12. A short distance from the railroad right of way he met the decedent walking rapidly toward the railroad. Immediately thereafter, the witness saw a southbound freight train approaching around a curve from the north. He went home, and did not learn of Spoonamore's death until the next morning. John Leece saw the decedent just before the accident. Leece was walking north along the railroad track, and met the decedent between path No. 9 and path No. 12. Decedent was walking between the rails on the main track going south into town. Leece turned off at path No. 12, and shortly after leaving the railroad right of way saw a freight train approaching from the north on the main track. Jack Johnson, a witness introduced by appellant, testified that he passed along the railroad

track going from his home to Brodhead about 1:30 p. m. and saw a boy sitting on the east rail of the main track. He was sitting with his head in his hands and did not lift his head when Johnson spoke to him as he passed, but the boy looked like Ray Spoonamore. Johnson was thoroughly impeached, and, in view of the positive testimony of Harris and Leece who saw decedent walking toward Brodhead immediately before the accident, we think there was ample evidence from which the jury might reasonably conclude that the decedent was walking on the tracks when he was injured.

The evidence was sufficient to take the case to the jury, and the judgment is affirmed.