Christopher **KIRSCHNER, An Infant by His Father and Next Friend, Gary E. KIRSCHNER, and Gary E. Kirschner and Linda Kirschner, Individually, Movants,**

v.

**LOUISVILLE GAS & ELECTRIC COMPANY, Respondent.**

No. 86–SC–1001–DG.

Supreme Court of Kentucky.

Jan. 21, 1988.

Edgar A. Zingman, Virginia H. Snell, Mary E. Barrazotto, Wyatt, Tarrant & Combs, Louisville, for movants.

John W. Bilby, Mark S. Fenzel, Jeffrey D. Thompson, Middleton & Reutlinger, Louisville, for respondent.

STEPHENSON, Justice.

In this lawsuit for personal injury, the trial court granted summary judgment to Louisville Gas & Electric Company. The Court of Appeals affirmed. We granted discretionary review and affirm.

The factual situation, as described by the Court of Appeals, is as follows:

Christopher Kirschner was a highly intelligent, active fifteen-year-old who had just begun his freshman year in the honors program at Trinity High School and had made the honor roll. He led an active extracurricular life, both inside and outside of school.

The events leading up to Chris' being injured began on September 15, 1983. His activities on this date when he arrived home from school were his usual having something to eat, doing his homework, and then going outside to be with friends until dark. On this occasion, as Christopher Kirschner and his friends had often done in the past, they went to an open field near his neighborhood to play. He and his friends were not the only children who played regularly in the field. All of the other children in the neighborhood played in that area.

LG & E owned an easement across the open field for the distribution of electricity and transmission of electricity by means of high-voltage transmission wires strung overhead from a tower in the field, then onward to other distant towers. The tower in question was located near an entrance to the field and was of the usual open "Eiffel

Tower" looking type secured to a concrete base. There is no dispute but that LG & E owned so much of the property as was covered by their electrical transmission easement and that it owned and maintained the tower itself.

One of the four legs of the tower was equipped with ladder-like spikes protruding on opposite sides for the purpose of climbing the tower. The lower rungs could be reached by standing on the concrete base. There was no fence or other structure surrounding the tower. The four-tower legs beginning at the base and continuing up to a level of 66 feet form a hollow, open-pyramid shape with cross-supporting beams. Upward from the 66–foot level, they form a hollow square and continue in this shape to the top. At the 66–foot level, the cross girders forming the perimeter of the square are close enough to each other so that a platform could be formed by placing plywood across the outer girders. Also, at this level is the first of five sets of cross arms to which are attached the transmission lines carrying LG & E's high-voltage electricity.

On the day before the accident, Christopher Kirschner and his friends had hauled a piece of plywood from some distance to this field and up the tower to the 66–foot level and formed a platform with it. They returned the next day, the date of the accident, and climbed the "ladder" girder leg to the platform. At the first cross member above the concrete base directly in front of the ladder rungs is a plainly visible warning sign containing on three separate lines the words, "DANGER HIGH VOLTAGE" underneath each other. The top word, "DANGER," was in red capital letters on white; the next word "HIGH," in black on white; as well as the bottom word, "VOLTAGE," which also had a sharp accent mark over its first and last letter.

Once having settled in on the plywood platform, Christopher Kirschner spotted several young ladies from the neighborhood approaching on one of the many pathways through the open field, and he waved to them. In doing so, he did not touch any of the high-voltage transmission lines which were perhaps six feet away. The record is not clear as to the exact distance. At this point, electricity from the transmission lines arced, striking Christopher Kirschner and causing severe injuries to him.

With all of the activity in the field around the tower, there is nothing in the record to show directly or by inference that any other children had climbed the tower or that LG & E had any notice directly or by inference that anyone had done so.

The trial court granted the motion for summary judgment on the basis that Kirschner was a trespasser.

LG & E also relied upon KRS 381.232 as a bar to recovery. Kirschner asserts that KRS 381.232 is contrary to the Constitution of Kentucky, Sec. 54, in that it eliminates a cause of action existing at the time of the adoption of the present Constitution in 1891 or is more restrictive than a cause of action embodied in the common law in 1891. The statute provides:

> The owner of real estate shall not be liable to any trespasser for injuries sustained by the trespasser on the real estate of the owner, except for injuries which are intentionally inflicted by the owner or someone acting for the owner.

"Trespass" is defined in KRS 381.231(1) as follows:

> A "trespasser" means any person who enters or goes upon the real estate of another without any right, lawful authority or invitation, either expressed or implied, but does not include persons who come within the scope of the "attractive nuisance" doctrine.

We are of the opinion that the phrase "injuries which are intentionally inflicted" represents a codification of the common law recognized before the adoption of the present constitution. In construing this phrase, we hold that *intentionally* inflicted means inflicted by *willful, wanton,* or *reckless* conduct. This type of conduct has been defined in Prosser & Keeton on the Law of Torts, 5th Ed. (1984), Chapt. 5, Sec. 34, pp. 212–213 as:

> ...They apply to conduct which is still, at essence, negligent, rather than actual-

ly intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if it were so intended....

The usual meaning assigned to "willful," "wanton," or "reckless," according to taste as to the word used, is that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences....

In support of his assertion that the statute is unconstitutional, Kirschner relies on *Bransom's Administrator v. Labrot*, 81 Ky. 638, 5 Ky.Law Rep. 827 (1884), and *Louisville and Nashville Railroad Co. v. Popp*, 96 Ky. 99, 27 S.W. 992 (1894).

Both of these cases are inapposite; both involve small children and are more an application of what is now the "attractive nuisance" doctrine. When addressing the issue here, *Bransom's Adm'r*, in dicta, stated that "the owner has no right to *wantonly* injure even an actual trespasser."

*Kentucky Central R.R. Co. v. Gastineau's Adm'r.*, 83 Ky. 119 (1885), contains a comment on the state of the law as to trespassers as follows:

It is not required to anticipate the intrusion of others; and one who enters upon them without right, does so at his peril; and, in case of injury, cannot recover, unless it was wantonly inflicted after the danger was discovered. Its duty to such a person or a trespasser is merely negative—it must not, when it knows of the peril, act maliciously or with a disregard of obvious consequences. It is not required to use care to anticipate and discover the peril to such a person, but only to do so after the discovery of the danger. Until then no legal duty is imposed upon it, because no one, by a wrongful act, can impose a duty upon another.

The opinion also contains an observation on what is now the attractive nuisance doctrine:

Undoubtedly children of tender years should not be treated strictly as trespassers, when guided by childish instincts they stray upon the track or into the yard of a railroad.

We do not have that issue in this case.

The quote from *Kentucky Central R.R. Company* would seem to be even more severe than the duty imposed on a landowner by the terms of the statute.

The citation of pronouncements by this court on pre–1891 cases has not covered a definitive statement on the state of the pre–1891 law on the duty, if any, owed to a trespasser by a property owner. It is incumbent on Kirschner to show us that the statute is more restrictive than the state of the law in 1891, and he has not.

Our research has not improved upon the research of counsel. Turning to post–1891 cases, we find *Johnson v. Paducah Laundry Company*, 122 Ky. 369, 92 S.W. 330 (1906). On the theory that the 1906 court is more versed in long-standing common law rules prior to 1891 than are we, this statement is found:

In the case before us the plaintiff's own testimony shows that he deliberately and purposely left the highway for the purpose of walking across the lot to take his uncle out of sight of the street. He was willfully using the defendant's property for his private purposes without any invitation from the defendant, and without its consent. So far as he is concerned, it is immaterial how far the vat was from the highway. He was not a traveler on the highway at all when he fell into the vat. He was then a trespasser on appellant's lot, having intentionally left the highway for purposes of his own. The case would not be essentially different if there had been no highway adjoining the lot. It is insisted, however, that the owner of this uninclosed lot in a city ought to know that trespassers are liable to come upon it, and that a vat of boiling water is a thing so dangerous that it is negligence in the owner not to guard it as to one who falls into it in the dark. The general rule is that the owner of private grounds is un-

der no obligation to keep them safe for the benefit of intruders who come upon them for their own purposes, however innocent the purpose may be. 1 Thompson on Negligence, §§ 945, 946. The exceptions to the rule are where the owner of the property expressly or impliedly invites the use of it, or so maintains it as to make it what is sometimes called an attractive nuisance, especially in the case of children and animals. See, also, Bishop on Noncontract Law, §§ 845–853; *Bransom's Adm'r v. Labrot*, 81 Ky. 638, 50 Am.Rep. 193, and cases cited. The case before us does not fall within either of these exceptions.

and, further, quoting with approval from an Arkansas case, this statement:

"In order to maintain an action for an injury due to negligence, there must be shown to exist some obligation or duty toward the plaintiff which the defendant has left undischarged or unfulfilled. [Citing authorities.] Hence it is that the owner of dangerous premises is not answerable for injuries suffered by a trespasser or mere licensee who comes thereon without invitation, allurement, or right. To such persons he owes only the duty to do them no wanton or willful harm. This seems a harsh rule, which justifies a man, legally, in keeping his property in a needlessly dangerous condition; but it has the support of the authorities, without, perhaps, exception."

■ This statement of the rule is in accord with the present-day rule and compatible with our interpretation of the statute. We are of the opinion the statute does not violate Sec. 54 of the Kentucky Constitution.

The order granting summary judgment by the trial court recited that "there appearing to be no material issue of fact disputing plaintiff's actions and conduct to be that of a trespasser, defendant's motion for summary judgment is sustained," citing *Chesser v. Louisville Country Club*, Ky., 339 S.W.2d 194 (1960).

■ Kirschner asserts that the trial court relied upon KRS 381.232 for his decision. For that reason, we discussed the constitutionality of the statute. The order does not state whether the trial court relied on the statute or on strictly common law principles. We are of the opinion the order granting summary judgment is proper in any event.

*Chesser* states the common law rule:

The possessor of premises owes no duty to a bare licensee or a trespasser to keep the premises safe for use of either, but he must refrain from inflicting or exposing him to wanton or willful injury or from setting a trap for him.

Kirschner argues that we should abolish the distinctions between trespassers, licensees, and invitees. He argues that these distinctions are archaic, outmoded, and promote "all or nothing" results expressly disapproved in *Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984).

In considering whether to abandon principles of tort law, we should take a look at what standard is offered to replace these principles. Kirschner argues that he was, at fifteen, only a few months beyond the protection of the "attractive nuisance" doctrine, which also should be abolished. In lieu of these established rules, Kirschner proposes that all cases be submitted to the jury on the basis of "reasonable care under the circumstances." This standard would apparently do away with the concept of a duty owed and liability for breach of that duty. Historically, all tort law has been based on the theory of whether a defendant violated a duty owed to the injured party. There is nothing illogical or unfair in requiring violation of a duty before liability can be imposed, and we reject Kirschner's assertion that we should abolish the classifications of trespasser, licensee, and invitee. *Hilen* does not stand for the proposition that legal duties should be abolished; it simply determined that liability should be imposed according to fault, i.e., comparative negligence. *Hilen* presupposes a submissible issue of negligence and does not even suggest abandoning the concept of duties.

Thus, we conclude that Kirschner was a trespasser as a matter of law. He and his

friends brought the plywood from a distance and carried it up the tower. The argument that somehow Kirschner was a licensee for the reason that LG & E knew children played in the field under the tower is simply not tenable. A trespasser is one who goes upon the property of another without any right, lawful authority, or invitation, either express or implied. There is nothing in this record to even suggest that LG & E knew or should have known that individuals were climbing the tower. Therefore, there is no implied invitation, and the presence in the field under the tower is simply irrelevant. The burden is on Kirschner to show an implied invitation, not LG & E to disprove this.

■ Lastly, Kirschner asserts that there is an issue of whether even as a trespasser LG & E exposed Kirschner to a concealed, dangerous condition. Kirschner admitted that he knew electricity is dangerous, although he equivocates about seeing the "Danger" sign, and he could not be heard to deny seeing clearly visible signs which he had to climb over. In this assertion, Kirschner claims that the concealed dangerous condition or "trap" is the fact that the injuries complained of were caused not by contact but by "arcing." Kirschner relies on *Chesser v. Louisville Country Club*, supra. We find this opinion unapplicable. *Chesser* involved a condition created by the owner of the premises and liability was denied for the reason it was not foreseeable that the "licensee" would drink from the whiskey bottle. The bottle was filled with a poisonous liquid which caused severe injuries.

Here, the injury was caused by a known propensity of high-voltage electricity. High-voltage electricity is dangerous. There was sufficient warning of the danger, and we do not consider "arcing" to be a concealed dangerous condition in these circumstances.

The decision of the Court of Appeals and the order of the trial court are affirmed.

GANT and WINTERSHEIMER, JJ., concur.

LAMBERT, J., concurs in result only.

STEPHENS, C.J., and LEIBSON, J., dissent and file separate dissenting opinions.

VANCE, J., not sitting.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

We cannot hope to get the right answer in this case if we do not understand the question. The question is whether, because of the trespasser statute (KRS 381.-232), Louisville Gas & Electric Company (hereinafter "LG & E") enjoys immunity from paying its fair share of responsibility for this occurrence, if it can be proved, as alleged, that LG & E was wholly or partially at fault.

The real issues in this case are:

1) Is the trespass statute constitutional?
2) If not, is there common law immunity?
3) Is this a summary judgment case?

The first question is the constitutionality of the trespass statute enacted in 1976. It turns on whether the statute impairs constitutionally protected rights guaranteed by Sections 14, 54 and 241 of the Kentucky Constitution. In 1890 our constitution forbearers structured our Constitution to prevent the General Assembly from enacting laws to grant privileges and immunities to the politically powerful at the expense of the people. *See 1890 Constitutional Debates,* 4 Vol. Therefore, to protect the tort rights of our citizens, the Constitution prevents the General Assembly from interfering with the right of redress in the courts for personal injury or with remedy by due course of law (Section 14), from limiting the amount of recovery for personal injury or wrongful death (Section 54), and from interfering with the right to recover damages in every case where death results from injury inflicted by negligence or wrongful act (Section 241). As stated in *Ludwig v. Johnson,* 243 Ky. 533, 49 S.W.2d 347 (1932), holding the Kentucky automobile guest statute unconstitutional under these Sections:

"... the conclusion is inescapable that the intention of the framers of the Constitution was to inhibit the Legislature from abolishing rights of action for damages for death or injuries caused by negligence. *Id.* [49 S.W.2d] at 350.

In *Happy v. Erwin*, Ky., 330 S.W.2d 412 (1959), our Court confronted and held unconstitutional a statute which extended immunity to the officers and employees of the City of Mayfield for negligence in the operation of its fire apparatus outside the city limits. The Court quoted from *Ludwig v. Johnson* as follows:

"It was the manifest purpose of the framers of that instrument [the Constitution] to preserve and perpetuate the common-law right of a citizen injured by the negligent act of another to sue to recover damages for his injury." 49 S.W.2d at 351.

This case cannot be distinguished from the *Ludwig* case. In the *Ludwig* case the statute at issue prohibited the passenger's right of recovery against the driver absent *intentional misconduct*. In the present case the statute at issue is in terminology essentially identical. It prohibits recovery "for injuries sustained by the trespasser on the real estate of the owner, except for injuries which are intentionally inflicted...." KRS 381.232.

Nothing has changed since the *Ludwig* case except the climate on this Court. For reasons that cannot be explained except in terms of retreat from constitutional principles, we are no longer prepared to preserve individual rights constitutionally protected.

If we face the issue squarely we will acknowledge that it has not been the law since the days of feudalism that the only duty owed to a trespasser is not to intentionally injure him. In language expressed by Mr. Chief Justice Kenison of the New Hampshire Supreme Court, in *Sargent v. Ross*, 113 N.H. 388, 308 A.2d 528, 530 (1973), "[t]his 'quasi-sovereignty of the landowner' ... finds its source in an agrarian England of the dark ages"; it should "be relegated to the history books where it more properly belongs." *Id.* 308 A.2d at 533.

There are two types of trespassers: wrongdoers who come upon the property for some illicit purpose, and innocent trespassers who intend and commit no harm. Long before our present constitution our law had taken account of the difference and recognized the legal responsibility of the landowner to the innocent trespasser where injury to the intruder was foreseeable and readily preventable. Two distinctly discernible inroads involved cases recognizing the attractive nuisance doctrine and cases recognizing a new classification of implied licensee. *Bramson's Adm'r. v. Labrot etc.*, 81 Ky. 638 (1884), and *Louisville & N.R. Co. v. Popp*, 96 Ky. 99, 27 S.W. 992 (1894), recognize the landowner's duty towards children who are attracted to play on the premises. And in *Louisville & N.R. Co. v. Spoonamore's Adm'r.*, 278 Ky. 673, 129 S.W.2d 175, 177 (1939), we find a discussion of the responsibility owed to "trespassers [who] constantly intrude upon a limited area ... for bodily harm there caused to them by [the landowner's] failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety." *Spoonamore's Adm'r.* achieves this result by designating such a trespasser a bare licensee. The trespasser was seventeen years old.

The present case presents a situation for application of the so-called "attractive nuisance doctrine," as in *Bramson's Adm'r.* and *Popp, supra*, unless the child's right to protection from foreseeable injury is foreclosed by the age barrier (the 15th birthday). Heretofore the attractive nuisance doctrine has been limited to children under the age of fourteen. However, nothing magical occurred on Christopher Kirschner's fourteenth birthday. The reason for limiting the attractive nuisance doctrine to children under the age of fourteen related to the doctrine of contributory negligence, and nothing else. *Louisville & N.R. Co. v. Hutton*, 220 Ky. 277, 295 S.W. 175 (1927). At common law all persons over the age of fourteen were held responsible for their own negligence in the same way as adults. Thus contributory negligence as a matter of law foreclosed consideration of

the landowner's negligence after age fourteen. However, we now utilize the principle of comparative negligence and contributory negligence is not a complete bar to recovery. *Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984). Young Christopher Kirschner's negligence no longer absolves LG & E from its share of responsibility. If it can be proved, as claimed, that this transmission tower was located in a field in a residential neighborhood commonly used as a playground, readily accessible and frequently utilized for climbing, with those climbers unknowingly exposed to a concealed and powerful danger, the arcing potential of electricity in high voltage wires; if, as alleged, all this was known or should have been known to LG & E; if, as alleged, the injury was foreseeable and preventable by fencing the tower or by warning of this danger from arcing, or both; then LG & E has a legal responsibility in what has occurred.

The Kirschners' claim their evidence will show that this arcing potential in high voltage wires is a concealed, latent, highly dangerous condition which was known to the defendant and not to the plaintiff. The Kirschner boy has testified that he did not get within six feet of the high tension wires on this tower. If the facts asserted by the Kirschners are true, the result reached in the Majority Opinion belongs in Feudal England where protection of the property of the privileged class was more important than the lives of the common people, but it does not square with the right of redress guaranteed by our Kentucky Constitution. The right of redress for an injury negligently inflicted as guaranteed in our Constitution recognized an exception for trespassing children and those trespassers who were permitted to continually and foreseeably intrude up on the premises, who were then called implied licensees. Our Constitution did not limit such persons to recovery only for injuries intentionally inflicted upon them, and we commit grievous error in interpreting our Constitution to permit such immunity by statute.

It is obvious that the Majority Opinion recognizes the statute's shortcomings. It seeks to avoid such shortcomings by "construing ... intentionally inflicted" to mean something else, although unfortunately the something else is something short of what the law of torts provides for this situation. The Majority Opinion assigns to the statutory term, "intentionally inflicted," a definition from Prosser & Keeton, *The Law of Torts* (5th ed. 1984), which is appropriate for the words "willful," "wanton," or "reckless," but inappropriate to the statutory term at issue. Then the Majority Opinion cites *Kentucky Central R.R. Co. v. Gastineau's Adm'r.*, 83 Ky. 119 (1885), which recognizes the trespasser's right to recover for an injury "wantonly inflicted" and which further recognizes a duty of care towards trespassing children, as included within the statutory term "intentionally inflicted." In order to avoid declaring the statute unconstitutional, the Majority Opinion stretches the unconstitutional term "intentionally inflicted" beyond recognition.

No one reading this Majority Opinion can possibly grasp its meaning. It confuses the law, rather than clarifying it, to say this statute does no more than codify the common law. The working premise for this case should be to declare the statute unconstitutional, which it is, and then go forward with deciding whether LG & E, which was erroneously granted a summary judgment based on the statutory requirement that the injury be "intentionally inflicted," was in fact entitled to a summary judgment at common law. Based on the pleadings and evidence of record, the answer to this question is an emphatic no, for two reasons.

The first reason is covered in the Dissenting Opinion by Chief Justice Stephens. A summary judgment is appropriate only when it is clear from the record that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," and here there is a "question as to [the Kirschner boy's] status as a trespasser."

As Chief Justice Stephens states:

"Appellant contends that he was not a trespasser, but that he had an implied

invitation to play in the field and on the tower. He claims the appellee knew of the children playing there and made no attempts to stop it, thus inviting his actions."

Assuming that LG & E did not know that children played on this particular electrical transmission tower, or at least that actual knowledge cannot be proved, the record shows that LG & E knows of the propensity of children and others in populated areas to climb such towers and that it does on occasion fence such towers to deter them. High tension transmission wires are "one of the most dangerous things known to man." *Dunning v. Kentucky Utilities Co.*, 270 Ky. 44, 109 S.W.2d 6, 9 (1937). Although the danger from touching such a wire is obvious, the arcing potential that caused this injury is certainly not a matter of common knowledge. The "DANGER HIGH VOLTAGE" sign would hardly alert a teenage boy to the hidden danger that caused this catastrophe.

The next reason is that, in the present circumstances, regardless of classification as trespasser or licensee, the evidence is sufficient to apply the "attractive nuisance" doctrine. Prosser, *Law of Torts*, Sec. 59 (4th ed. 1971); *Restatement (Second) of Torts*, Sec. 339 (1966). The present situation satisfies the requirements for liability under this doctrine except for the age limit of fourteen utilized in Kentucky in earlier cases. *Louisville & N.R. Co. v. Hutton, supra; Bentley v. Southeast Coal Co.*, Ky., 334 S.W.2d 349 (1960). With the demise of contributory negligence as an absolute defense, the advent of Christopher Kirschner's fourteenth birthday fourteen months before the occurrence no longer forecloses its application.

*Restatement (Second) of Torts*, Sec. 339, Comment C, Children, states:

"The later cases, however, have included a substantial number in which recovery has been permitted, under the rule stated, where the child is of high school age, ranging in a few instances as high as sixteen or seventeen years. The explanation no doubt lies in the fact that in our present hazardous civilization some types of dangers have become common, which an immature adolescent may reasonably not appreciate, although an adult may be expected to do so. The rule stated in this Section is not limited to 'young' children, or to those 'of tender years,' so long as the child is still too young to appreciate the danger, as stated in Clause (c).

... The great majority of the courts have rejected any such fixed age limit, and have held that there is no definite age beyond which the rule here stated does not apply. As the age of the child increases, conditions become fewer for which there can be recovery under this rule, until at some indeterminate point, probably beyond the age of sixteen, there are no longer any such conditions."

The Majority Opinion seeks to rescue statutory language ("intentionally inflicted"), clearly unconstitutional, with an unworkable explanation that it means something different and less offensive. Unfortunately, the court's holding that the statute and its offending language is constitutional will become the law and the unintelligible explanation will be disregarded. It is profoundly regressive, by statute or otherwise, to stick the landowner in a protected pigeonhole solely by reason of his status as landowner, and there to immunize him from any further responsibility to the rest of humanity except for injury intentionally inflicted. The duty to exercise reasonable care commensurate with the circumstances not to injure other human beings is the universal duty owed by everyone to everyone. *Gas Services Co., Inc. v. City of London*, Ky., 687 S.W.2d 144 (1985). Certainly there are circumstances where as a matter of law it is unreasonable to impose liability, and the defendant's status as landowner is an important factor in determining what is reasonable conduct. But the landowner's status is by no means a complete and final answer. An enlightened legal system does not reason backward from labels, or from titles, to decide on whether there is a duty of reasonable care towards one's fellow man. It reasons forward from this premise using foreseeability, the gravity of the potential harm, and

the landowner's right to control his property, to decide what is reasonable conduct in the circumstances and what is negligence.

Recently, we discarded the pigeonhole approach to dram shop liability, holding tavern keepers responsible for the foreseeable consequences when serving liquor to a noticeably intoxicated person. *Grayson Frat. Order of Eagles v. Claywell*, Ky., 736 S.W.2d 328 (1987). We quoted with approval from Prosser & Keeton, *Law of Torts*, Sec. 53 (5th ed. 1984), discussing "the 'artificial character' of reasoning from the premise of 'no duty' in disregard of negligence principles." 736 S.W.2d at 330. It is this fundamental principle that liability follows fault that is protected by Sections 14, 54 and 241 of our Kentucky Constitution against a grant of immunity by the General Assembly.

We should hold KRS 381.232 unconstitutional and further hold that the summary judgment was premature. We should remand this case to the trial court for further consideration under the principles of tort law discussed in this Dissenting Opinion.

STEPHENS, Chief Justice, dissenting.

A summary judgment is appropriate only when there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. In the case at bar, there is indeed a dispute as to the facts. Appellant argues that the trial court erred in finding that there was no question as to his status as a trespasser. If an owner acquiesces to a particular use of his property, such acquiescence is tantamount to the owner's implied consent for the person to use the property.

> Habitual or customary use of property for a particular purpose, without objection from the owner or occupant, may give rise to an implication of consent to such use to the extent that the users have the status of licensees, where such habitual use or custom has existed to the knowledge of the owner or occupant and has been accepted or acquiesced in by him.

*Bradford v. Clifton*, Ky., 379 S.W.2d 249, 250 (1964).

Appellant contends that he was not a trespasser, but that he had an implied invitation to play in the field and on the tower. He claims the appellee knew of the children playing there and made no attempts to stop it, thus inviting his actions.

Appellant should be given the opportunity to develop the facts that may prove he was not a trespasser. If successful, he would no longer fit into the strict confines of KRS 381.232, and he would indeed be able to seek compensation for his injuries. Granting him the opportunity to prove he was not a trespasser does not guarantee recovery, for he must further prove liability. Nevertheless, it is certainly preferable to slamming the courthouse door in his face and never allowing him the chance to try.

For these reasons, I respectfully dissent.